## HERSHMAN *v.* UNIVERSITY OF TOLEDO.

(No. 84-08466—Decided February 12, 1987.)

Court of Claims of Ohio.

*Rogers & Godbey Co., L.P.A.,* and *George C. Rogers,* for plaintiff.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Elizabeth A. Tarpy,* for defendant.

WILLIAM F. BROWN, J. On or about September 22, 1983, Phyllis Hershman enrolled at the University of Toledo, College of Education. At that time, her status was determined to be "undergraduate with degree." Hershman had obtained two degrees prior to her enrollment at the University of Toledo: a Bachelor's Degree in communications and a Master's Degree in interpersonal communications, both from Ohio University. In addition, at the time of her enrollment, Hershman had passed her comprehensive examinations and had completed all but a dissertation for a doctorate in speech at Bowling Green State University. Immediately prior to registering at the university for the academic year 1983-1984, Hershman was the Director of Forensics at the College of Wooster. This position was terminated at the end of that academic term.

On or about September 22, 1983, and prior to Hershman's official enrollment at the university, she was introduced by Dr. John Ahern, also a professor at the university and a common friend, to Dr. Mary Jo Henning, Chairperson and Professor of the Department of Secondary Education at the University of Toledo.

Dr. Henning was responsible for scheduling the three professional education methodology courses required of *all* students seeking teacher certification at the secondary or high school level. These courses were Secondary Education 310, Secondary Education 340, and Secondary Education-Student Teaching 392. All of these classes were methodology courses only. The testimony was that Dr. Henning neither scheduled nor advised students in those general courses required to fulfill their major area of specialty or study, such as math,

English, science, etc. It was testified that counseling as to those requirements was the responsibility of the Office of Student Services.

At their meeting, Dr. Henning and Hershman initially discussed Hershman's education and employment history. The discussion developed that Hershman had extensive experience as a coach and instructor in forensics, debate and speech. As to the purpose of the meeting, the preponderance of the evidence indicated that Hershman informed Dr. Henning that she wanted to enroll at the University of Toledo to obtain teacher certification at the secondary school level. Time was of the essence. Hershman informed Dr. Henning that she needed to obtain teacher certification by the end of the academic year. Dr. Henning testified that it was her understanding that Hershman wanted to coach debate or forensics at a high school in Illinois beginning in the fall of 1984 and that the position required a teacher certification in secondary education.

Since Hershman's two previous degrees and her doctoral degree, as far as it was pursued, were in the area of speech and communications, Dr. Henning testified that she had advised Hershman that the logical and obvious subject for certification was speech, especially because there was a time limit involved. Dr. Henning testified that at no time did Hershman tell her that she wanted to be certified in English.

Shortly after her meeting with Dr. Henning, Hershman went to the Office of Student Services and enrolled as "an undergraduate with degree." There was no showing that Hershman indicated to anyone or on any registration form that she was enrolling to obtain a teacher's certification in English. There was testimony that when she submitted her registration, Laurie Gueli, an employee at the Office of Student Services, asked Hershman whether she wanted to see and talk with a counselor; Hershman declined the offer.

There was no testimony that Hershman read the university's bulletin, either prior to enrolling at the University of Toledo or at anytime thereafter. As a result, she did not submit an application for a credit and transcript evaluation. Consequently, no one at the Office of Student Services had knowledge of Hershman's plans and, more importantly, no one at the Office of Student Services had an opportunity to evaluate her transcripts in order to inform Hershman what general education and major courses she would need to fulfill all the requirements for certification (to teach English).

Nevertheless, Hershman enrolled and completed one quarter of course work at the university (Fall Quarter 1983). During that time, she submitted a request to student teach to Dr. Joan Inglis, Director of Student Field Experiences. In her request, dated October 25, 1983, Hershman requested Dr. Inglis' approval to student teach in a high school in Illinois. The only mention of teacher certification in Hershman's letter was couched in terms of a desire to teach in "communication-related areas." Nowhere in her request of October 25, 1983 did Hershman inform Dr. Inglis that she wanted to be certified to teach English. Dr. Inglis testified that she was under the impression that Hershman was at the university for the purpose of getting a teacher certification in speech.

Hershman submitted a formal application to student teach sometime in the latter part of the winter of 1984. This application was reviewed by Cheryl Seyfang, a counselor at the Office of Student Services, to determine whether Hershman met the requirements necessary to student teach in

speech. On March 7, 1984, Hershman was approved to student teach in speech and was assigned a placement at Whitmer High School in Toledo, Ohio. On or about March 9, 1984, Phyllis Hershman was informed that she was approved to student teach in the area of speech. At the same time, Hershman was told that she could and would obtain a teacher certification in speech by the end of the academic year.

Immediately thereafter, Hershman informed Dr. Henning, Dr. Inglis, and Seyfang, that she did not want to student teach in speech. Furthermore, Hershman said that she did not want a certification in speech. Plaintiff Hershman dropped out of the university.

Hershman alleges, in substance, that she enrolled as a graduate student in the university's College of Education in order to obtain a certification to teach English; that prior to her enrollment and following her enrollment until March 1984, it was represented to her by various employees and agents of the university that she could become certified to teach English at the secondary level within one academic year; and that in reliance upon this representation, she enrolled.

Phyllis Hershman presented no evidence, other than her own testimony, to establish that any representative or employee of the University of Toledo represented fraudulently or otherwise that she could obtain a teacher certification in English in one year.

Hershman relies solely on her uncorroborated testimony that Dr. Henning represented and advised her that she could obtain a teacher certification in English in one year. On the other hand, Dr. Henning testified on both direct and cross-examination and on examination by the court that she did not advise and could not have advised Hershman to that effect because

Hershman had never told her that was her intention.

During testimony, defendant's counsel, Elizabeth A. Tarpy, asked Dr. Henning if September 22, 1983 was roughly the date she testified that Dr. John Ahern introduced Phyllis Hershman to her in her office. Dr. Henning responded that it was around that date. Tarpy then asked Dr. Henning if Phyllis Hershman told her at that time that she was enrolling at the University of Toledo in order to get a teacher's certificate in English at the secondary education level. Dr. Henning testified she did not. When asked if Phyllis Hershman told her she was enrolling at the University of Toledo in order to obtain a teacher's certificate at the secondary education level in a comprehensive communication degree, she answered in the negative. The court then clarified with Dr. Henning that plaintiff had not at any point in her discussions with the plaintiff indicated or otherwise conveyed to her an understanding that she was expecting to qualify to teach English.

Dr. Henning was then asked if an "undergraduate with degree" student comes to the University of Toledo with a background in speech and wants to become certified to teach English at the secondary education level, would it be possible for that student to complete all the requirements necessary in order to be certified to teach English in one academic year. Dr. Henning answered that it would not be possible because the state of Ohio sets out a minimum number of hours in a major area and the number usually is between forty to fifty hours of course work in that content field in order to be minimally certified to teach in that field. Dr. Henning was then asked if one was to be certified in English, would there then have to be proof on the transcript that the person had taken at least forty-five to fifty hours

spread over the proper areas in writing, literature and so forth. Dr. Henning answered in the affirmative. Dr. Henning was then asked whether it would have been possible for Hershman, with her background in speech and the degrees that she came in with, to have become certified to teach English at the secondary education level within one academic year. The doctor's response was that it would not have been. Defendant contends that what Dr. Henning did advise Hershman was that she could become certified to teach speech by the end of the academic year. When questioned what her understanding was of why Hershman wanted to enroll at the University of Toledo, Dr. Henning replied that her understanding was, and continued to be, that Hershman had a possible job offer a year from the time she was in her office and she asked if it would be possible to be certified in a secondary field in that year's time. Dr. Henning went on to say that, given that plaintiff's previous degree work had all been done in speech and with that amount of degree work done, that plaintiff could have certainly been certified in the area of speech. Dr. Henning advised her to sign up for the speech section of 340 for the fall quarter. Secondary Education 340 is a specialized course in which one enrolls for a given quarter when it is offered. A student completing the aforementioned course receives twelve quarter hours.

When asked by the court why she would not have advised plaintiff to sign up for 03 English, Dr. Henning responded that it was because Hershman had not indicated to her that she wanted to be an English major. The court then stated, "She did not indicate to you that she wanted to qualify to teach English; is that what you are saying?" Dr. Henning answered that plaintiff had not indicated to her that she wanted to be certified in English.

As outlined in the University's Bulletin, it appears that Hershman could not become certified to teach English in one year because it would have been impossible for her to complete the academic requirements for certification in English.

In assessing Dr. Henning's credibility, the court takes note of the educational background of Hershman, the information allegedly provided by her to Dr. Henning, and the fact that Dr. Henning's conduct was consistent with her understanding of Hershman's objective. Furthermore, it does not seem likely that Dr. Henning would have advised Hershman that she could become certified in English in one year when Dr. Henning, a counselor of seventeen years, knew and testified that she knew such a task would be impossible.

There is no credible evidence in the record to support a finding that Dr. Henning represented that Hershman could become certified to teach English in one year; or that any statements made by Dr. Henning were made with any intent to mislead the plaintiff.

Dr. Henning readily admits that in September 1983, she represented to Hershman that she could become certified to teach speech in one year. In fact, on March 8, 1984, Hershman's application to student teach in speech was approved. Moreover, testimony of Dr. Henning, Dr. Inglis, and Seyfang was that on or about March 9, 1984, the university informed Hershman that she would obtain a teacher certification in speech by the end of the academic year.

The totality of the evidence here is unequivocal. Hershman failed to establish, by a preponderance of the evidence, that the University of Toledo committed any act of fraud or misrepresentation.

In an action for fraud or false representation, a claimant must demonstrate she not only relied upon

said representations, but the reliance was justifiable under the circumstances. (Section 537 of the Restatement of the Law 2d, Torts [1977] 80.) Plaintiff Hershman's sole reliance upon the statements allegedly made and the conduct of Dr. Henning to excuse her own behavior is not justifiable under the circumstances of this case. A review of plaintiff Hershman's testimony reveals she acted negligently in not making use of the information apparent and available to her and that her alleged loss was due to her own irresponsibility.

A copy of Hershman's transcript from the University of Toledo reveals Hershman signed up for the completed Secondary Teaching and Learning II, Speech. According to the plaintiff's own testimony, this course was recommended to her by Dr. Henning; and yet, Hershman did not dispute or correct Dr. Henning's recommendation to the effect that it was English, not speech, in which Hershman needed course work.

When questioned by defendant's attorney as to her statement that all of the courses were lined up for her by Dr. Henning and they included the 340 course with the specialty in speech, plaintiff responded that they were so lined up. When questioned why she went ahead and signed up for that specialty speech course and did not inform Dr. Henning that it would make more sense to take a specialty course in English if she wanted to be certified in English, she responded that she was not aware she was signing up for a specialty section. She said Dr. Henning wrote numbers on a paper and handed the paper to her and told her to sign up for this. Attorney Tarpy asked plaintiff if she ever looked at the Registration Book that had the list of classes for the fall of 1983. Plaintiff admitted she had not looked at the Registration Book, she had just taken the numbers from Dr. Henning's sheet. When the

court asked the witness if she had filled in the title of the class covered by that number, she replied, "* * * you just fill in numbers, you black penciled them in and then filled in the appropriate number." The plaintiff admitted she didn't know that was a specialty section in speech when she signed up for it and did not understand what courses she was taking. Plaintiff also claimed she really did not know what courses she was taking or the content; she stated that she accepted what was given to her.

It appears unusual to this court that Hershman did not know or attempt to discover the content of courses for which she signed up. The course numbers and course names appear in the university's Registration Book for Fall Quarter, 1983. Thus, Hershman had the opportunity to obtain the information as to the nature of the courses she enrolled in.

The plaintiff was not an unsophisticated teenager at the time and admitted that she was familiar with university "ropes." It is difficult to understand that a well-educated adult would not know the courses she paid for, signed up for, and attended.

When Hershman signed up for a speech course, there was an English course available during that same quarter. Yet, Hershman, who contends that she wanted to be certified to teach English, did not enter that course.

At the time Hershman enrolled at the university, the university made available a College Bulletin which contained all of the information regarding course requirements for certification. In addition, all of the rules and regulations concerning enrollment, transcript and credit evaluation were outlined in the bulletin. However, Hershman admittedly did not read or refer to this catalog. As a matter of fact, Hershman admitted, under cross-examination, that prior to the time she enrolled at the University of Toledo in

September 1983, and at no time during the Fall Quarter of 1983, had she read the 1983-1985 University of Toledo Bulletin of the College of Education and Allied Professions.

As a result of Hershman's own negligence, she failed to submit a request for credit evaluation as offered at page 65 of the bulletin. Consequently, no one at the university was called upon to review Hershman's transcripts, ascertain her objective and effectively counsel her as to what general education and major course work she would need to qualify for a teacher's certificate in English. Furthermore, when Hershman enrolled at the Office of Student Services, Laurie Gueli, an employee at the office, asked Hershman if she needed to or wanted to see a counselor and she declined the offer.

Plaintiff Hershman testified repeatedly that the reason she did nothing to avail herself of university rules, requirements or regulations, was because of her sole reliance on Dr. Henning's advice.

In the case of *Walker* v. *Ohio University* (1984), Court of Claims No. 83-01395, unreported, this court rejected a claim by a student that Ohio University had misled him to the effect that he would earn a Ph.D. degree without taking comprehensive examinations. The court provided the following analysis as to why the student's reliance was not justified:

"First, it must be borne in mind that plaintiff was not an uneducated teenager at the time the question of comprehensives arose. He was in his mid-twenties, had already obtained an undergraduate college degree, and had been involved in a graduate degree program for nearly four years. Secondly, he was aware of catalogue requirements regarding comprehensive examinations as a prerequisite for a Ph.D. degree. He, himself, brought up

the matter with Dr. Worrell in 1978 when he decided to work on a Ph.D. Thirdly, his acceptance of what Dr. Worrell told him as gospel, without further inquiry, was unwarranted in the light of the positive language of the catalogue. The evidence established that the office of the dean of the college, and of the chairman of the mathematics department, were always open to him." *Id.* at 13.

Plaintiff Hershman was twenty-six years old at the time she enrolled at the University of Toledo. She had a Bachelor's Degree in communications. Her skills as a debate and speech instructor culminated in her appointment as the Director of Forensics at Wooster College in early 1983. Given her education and employment history, Hershman's own statement that she was familiar with university "ropes" is significant.

Phyllis Hershman's complaint against the University of Toledo is based upon allegations of fraud and misrepresentation. Nowhere in Hershman's complaint does she allege that the university breached any contract, as represented in plaintiff's post-trial brief, and there had obviously never been a meeting of the minds. It is evident from a review of Hershman's complaint that her claim is one of negligent misrepresentation, not contract.

As stated, *supra,* plaintiff's complaint alleges that she enrolled as an undergraduate with degree in the university's College of Education, beginning in the fall of 1983; that prior to her enrollment, it was represented to her by Dr. Henning that she could earn a teacher certification in English in one academic year; that in reliance upon said representation, Hershman did enroll; and, the university did not award her a teacher certification in English at the end of the academic year, all of which was to Hershman's damage.

The requirements for establishing a fraud or misrepresentation claim were set forth in *Behrend* v. *State* (1977), 55 Ohio App. 2d 135, 142, 9 O.O. 3d 280, 284, 379 N.E. 2d 617, 621:

(1) a false representation, actual or implied, or a concealment of fact material to the transaction;

(2) knowledge of the falsity on the part of the person making the representation;

(3) intent to mislead another into relying on the representation;

(4) reliance, with a right to do so, by the party claiming injury; and

(5) injury resulting from that reliance.

Under the above-cited requirements, Hershman failed to establish by a preponderance of the evidence that the university committed any act of fraud or misrepresentation.

Hershman did not obtain a teacher certification in English because of any fault or fraud or misrepresentation on the part of the university. No one at the university knew that Hershman wanted to become certified in English, because she simply did not tell them. Moreover, Hershman's own conduct was consistent with Dr. Henning's understanding of plaintiff's intention — that what she said she wanted was to be certified to teach on the secondary level in one year. The university instructed and advised her accordingly. And, as the evidence shows, the university was ready and willing to bestow a certification in speech upon plaintiff. Plaintiff, however, declined the degree, and left the university.

In an action for fraud or false representation, the burden of proof is upon the plaintiff to prove such fraud by a preponderance of the evidence. *Manning* v. *Len Immke Buick* (1971), 28 Ohio App. 2d 203, 57 O.O. 2d 308, 276 N.E. 2d 253. See, also, *Place* v. *Elliott* (1947), 147 Ohio St. 499, 24 O.O. 410, 72 N.E. 2d 103. In the case before this court, Hershman failed to meet this burden.

There is no objective corroborating evidence in the record before this court to support a finding that any representative of the university represented that Phyllis Hershman could obtain a teacher certification in English in one year. If there was a misunderstanding in this case, Hershman cannot lay the blame on anyone but herself. She had ample opportunity to obtain information which, in her own interest, she should have utilized.

A staff of counselors at the Office of Student Services were on call and available to the plaintiff for assistance regarding required courses. Plaintiff declined an offer for assistance.

Plaintiff has failed to prove her claims by a preponderance of the evidence. Accordingly, her case must be dismissed and judgment in favor of defendant with costs to plaintiff.

*Case dismissed.*

WILLIAM F. BROWN, J., retired, of the Coshocton County Court of Common Pleas, sitting by assignment.