JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiff-appellant Jill Spafford ("Spafford") appeals from the trial court's order granting a directed verdict in favor of defendants-appellees Cuyahoga Community College ("Tri-C"), David Lucas, and Ellen Martin on her claims for violations of the Consumer Sales Practices Act and the Deceptive Trade Practices Act, breach of contract, fraud, and interference with business/employment relationships. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} A review of the record reveals the following facts: In the summer of 1998, Spafford received a brochure about a new program being offered at Tri-C called polysomnography. The brochure stated that polysomnography, the study of sleep and sleeprelated disorders, was being offered to train individuals to become registered sleep technicians. The informational materials sent to Spafford identified the program as a Certificate Program, stated that successful students would receive a Certificate in polysomnography, and that the course requirements had been designed to comply with the requirements of the Ohio Board of Regents.
 {¶ 3} Spafford enrolled in the polysomnography program and began her classes in the fall of 1998. The coursework was challenging and included classes in biology, chemistry, anatomy, neurophysiology of sleep, cardiopulmonary physiology, and clinical rotations at sleep disorder clinics. During the course of her studies, one of her instructors, Mike Perry ("Perry"), offered her a full-time job as a sleep technician at the Cleveland Clinic. Spafford did not accept the job because she wanted to complete the polysomnography program.
 {¶ 4} In December 1999, Spafford, along with two other students, completed the polysomnography program. Upon completion of the program, Spafford was hired by Perry at the Ohio Sleep Disorders Clinic and remained employed there on a part-time basis at the time of trial.
 {¶ 5} In June 2000, Spafford took the registry exam offered by the Board of Registered Polysomnographic Technicians ("BRPT"). She passed the test on her first try. Becoming a registered sleep technician is not required to secure employment as a sleep technician; however, it enabled Spafford to receive a higher rate of pay. In order to sit for the BRPT registry exam, a sleep technician was required to work 18 months in the field of sleep technology. Spafford's 12 months of coursework at Tri-C was credited towards the 18-month employment requirement necessary to sit for the exam.
 {¶ 6} In September 2000, approximately nine months after completing the polysomnography program, Spafford received a "Competency Award" from Tri-C. Spafford was upset that she had not received a "Certificate" and wrote a letter of complaint to the Department of Health Careers/Science. In response, Spafford received a letter from Dean Karen Meaney ("Meaney") stating that she had consulted with David Lucas ("Lucas"), the head of the polysomnography program, and admitted that the Competency Award received by Spafford did not fit the formal definition of a Certificate and was not approved by the Ohio Board of Regents. Meaney further admitted that the written materials provided to Spafford had been misleading in describing the polysomnography program but had been changed since then.
 {¶ 7} In December 2000, Lucas and Ellen Martin ("Martin"), the head of the clinical program at Tri-C, became aware that Spafford intended to file a lawsuit against Tri-C.[1] Martin contacted Perry about concerns she had about placing polysomnography students in a clinical setting with Spafford because of Spafford's issues with Tri-C. Specifically, Martin was concerned that Spafford might give a negative impression to students working at Perry's clinic. Perry acknowledged that Martin's concerns were reasonable but that he did not feel that Spafford would try to influence any of the students. Perry also testified that students from Tri-C were, in fact, placed in the clinic where Spafford worked.[2]
 {¶ 8} On March 29, 2002, Spafford filed a complaint in the Cuyahoga County Court of Common Pleas alleging breach of contract, fraud, interference with business/employment relationships, violation of the Consumer Sales Practices Act, and breach of the Deceptive Trade Practices Act. The gist of Spafford's complaint is that she believes that Tri-C promised to give her a one-year certificate, rather than an internal "Competency Award," and registration as a sleep technician upon successful completion of the polysomnography program. The major distinction between the internal award Spafford received and a one-year certificate award is that a one-year certificate award is accredited by the OBOR and is applicable toward an associate's degree.
 {¶ 9} On July 19, 2002, Tri-C filed a motion for summary judgment, which was denied by the trial court on November 12, 2002 and the matter proceeded to arbitration.
 {¶ 10} On February 26, 2003, the arbitration panel found in favor of Spafford and against Tri-C in the amount of $6,000. The panel also found in favor of Lucas and Martin and against Spafford. Finally, the arbitration panel awarded attorney fees to be determined by the trial court. On March 20, 2003, both parties appealed the arbitration decision.
 {¶ 11} On May 12, 2004, a jury trial commenced. At the close of defendants' case, the trial court granted a directed verdict in favor of Tri-C, Lucas, and Martin and dismissed the jury. It is from this decision that Spafford now appeals and raises six assignments of error for our review. The first five assignments of error will be addressed together since they are interrelated.
 {¶ 12} "I. The trial court erred in directing a verdict against appellant under the Deceptive Trade Practices Act in favor of appellees Cuyahoga Community College and David Lucas.
 {¶ 13} "II. The trial court erred in directing a verdict against appellant under the Consumer Sales Practices Act in favor of appellees Cuyahoga Community College and David Lucas.
 {¶ 14} "III. The trial court erred in directing a verdict against appellant for breach of contract in favor of appellee Cuyahoga Community College.
 {¶ 15} "IV. The trial court erred in directing a verdict against appellant for fraudulent misrepresentation in favor of appellee David Lucas.
 {¶ 16} "V. The trial court erred in directing a verdict against appellant for interference with an employment relationship in favor of appellees Cuyahoga Community College, David Lucas and Ellen Martin."
 {¶ 17} A motion for directed verdict is rightfully granted when, construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to such opposing party.Limited Stores, Inc. v. Pan American World Airways, Inc. (1992),65 Ohio St.3d 66. Such a determination is a question of law, not of fact. Thus, a trial court must submit claims to the jury if the plaintiff presents evidence on each element of the claims to establish a prima facie case. Id.
 {¶ 18} With these principles in mind, we proceed to address whether the trial court properly directed verdicts in favor of the defendants.
 A. Deceptive Trade Practices/Consumer Fraud 1. (Assignments of Error I and II) {¶ 19} In these assignments of error, Spafford argues that the trial court erred in directing a verdict in favor of Tri-C on her claims of deceptive trade practices and consumer fraud. Specifically, Spafford alleges that Tri-C engaged in false and deceptive advertising when it produced and distributed marketing literature, which stated that the polysomnography program was a "Certificate" program certified by the State and that completion of the program would lead to state registration.
 {¶ 20} The acts constituting a violation of Ohio's Deceptive Trade Practices Act are found in R.C. 4165.02 and provide in pertinent part:
 {¶ 21} "(A) A person engages in a deceptive trade practice when, in the course of the person's business, vocation, or occupation, the person does any of the following:
 {¶ 22} "* * *
 {¶ 23} "(2) Causes likelihood of confusion or misunderstanding as to the source, sponsorship, approval or certification of services;
 {¶ 24} "(3) Causes likelihood of confusion or misunderstanding as to the affiliation, connection or association with or certification by another;
 {¶ 25} "* * *
 {¶ 26} "(7) Represents that services that have sponsorship approval, characteristics, ingredients, uses, benefits, or quantities that they do not have * * *;
 {¶ 27} "* * *
 {¶ 28} "(11) Advertises services with intent not to sell as advertised."
 {¶ 29} In order to obtain monetary damages for Tri-C's alleged false or deceptive advertising, Spafford must prove the following: (1) a false statement, or a statement which is misleading; (2) which statement actually deceived or has the tendency to deceive a substantial segment of the target audience; (3) the deception is material in that it is likely to influence a purchasing decision; and (4) the plaintiff has been or is likely to be injured as a result.[3]
 {¶ 30} The Consumer Sales Practices Act prohibits suppliers from committing unfair or deceptive acts or practices in connection with a consumer transaction. R.C. 1345.02(A). It also prohibits unconscionable acts or practices in connection with a consumer transaction. R.C.1345.03(A). If the violation is an act that has previously been declared deceptive or unconscionable, either by rule adopted by the attorney general or by a decision issued by an Ohio court, the consumer may recover the greater of three times the amount of actual damages or $200. R.C. 1345.09(B).
 {¶ 31} Applying these standards, we find that the trial court properly directed a verdict in favor of Tri-C. First, we do not find that Tri-C's use of the word "Certificate" in its marketing literature was deceptive or unconscionable. Tri-C never stated that it was a "certified" program or that it was a "Certificate" program approved by the Board of Regents. It merely stated that the courses complied with the OBOR requirements. The record indicates that Tri-C had hoped that its polysomnography program would become a "Certificate" program as approved by the OBOR. However, if it was not approved, then Tri-C could issue a certificate of competency and still maintain that it was a certificate. While we agree that the use of the word "Certificate" may be a bit general, it, in its literal meaning, is what was rewarded to Spafford; she did receive a "certificate" of competency upon completion of the one-year program. The bottom line is that Spafford's claims are based on what Tri-C did not
tell her rather than what they actually told her.
 {¶ 32} Next, nothing in the literature produced and distributed by Tri-C suggests that completion of the polysomnography program would result in one becoming registered by the State. Although the brochure compared salaries for non-registered and registered sleep technicians, it did not state that completing the program would result in registration or qualification for the BRPT exam. In order to be "registered" by the State, a student would have to pass the BRPT exam. In order to be "qualified" to take for the exam, 18 months of work experience in the field was required. Spafford's subjective belief that she would become registered or qualified to take the BRPT exam simply by completing the program is not supported by any evidence in the record. All of the requisites and prerequisites were not listed in the marketing materials distributed by Tri-C. Spafford should have inquired into the qualifications and requisites of the program, since she admitted that she did not even know the field of polysomnography existed until Tri-C sent her the information regarding the program.
 {¶ 33} Assignments of Error I and II are overruled.
 B. Breach of Contract Assignment of Error III) {¶ 34} The relationship between a student and a university is contractual in nature. Behrend v. State (1977), 55 Ohio App.2d 135, 139
(when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature). Accordingly, there is no dispute that a contractual relationship existed between Tri-C and Spafford, only whether a breach of that contract occurred.
 {¶ 35} Spafford argues that Tri-C breached its contractual obligation to provide her with a one-year certificate and registration as a sleep technician upon her successful completion of the polysomnography program. In support of her argument, Spafford cites Malone v. Academy ofCourt Reporting (1990), 64 Ohio App.3d 588, in which the appellate court sustained an action against a school which falsely advertised that its program was accredited by the State and that students completing the paralegal curriculum would receive an associate's degree. Like Malone,
Spafford argues that Tri-C engaged in an advertising program to promote its polysomnography program which falsely claimed that students completing the program would receive a one-year certificate which would be recognized by the Ohio Board of Regents.
 {¶ 36} We find Spafford's reliance on Malone to be misplaced. First, Tri-C never stated that its polysomnography program was approved or accredited by the Ohio Board of Regents, only that the courses complied with the OBOR requirements. The informational literature provided by Tri-C stated that the participant would receive a "certificate." The plain language of the brochure was correct, it was a certificate program, a competency certificate program, and Spafford did receive a certificate. Moreover, the term "associate's degree," as used in Malone,
is open to only one interpretation, unlike the word "certificate" which is open to several interpretations. Indeed, April Suvak, one of the three participants in the polysomnography program, testified that she understood that she would receive some type of certificate upon her successful completion of the program, but that she did not remember if it had been characterized as an internal award from Tri-C or a certificate approved by the OBOR.[4]
 {¶ 37} Second, and more importantly, the plaintiffs/students inMalone were able to prove damages since none of the students were able to secure employment as paralegals, despite the tuition paid to the school. Here, Spafford received a significant benefit from completing the polysomnography program at Tri-C. Spafford received a job at the Ohio Sleep Disorders Clinic immediately upon completion of her coursework. Perry, her boss, testified that Spafford received a quality education, which helped her in her current position and that she would not have received a higher salary had she received a one-year certificate as opposed to the internal award that she received. Finally, Spafford's 12 months of coursework at Tri-C was credited toward the 18-month employment requirement necessary to take the BRPT registry exam, which she passed in June 2000 and which qualified her to earn a higher salary. Spafford's claims that she would not have entered the program had she known that she would receive an "Internal Award" rather than a "Certificate" recognized by the State or that she would have accepted a job during the course of her studies are simply too speculative. Finally, Tri-C never made any promise that completion of the program would result in Spafford becoming registered by the State in polysomnography. To become a registered sleep technician in Ohio, individuals must work in the field for 18 months and pass the BRPT exam. Having a one-year certificate from an accredited school would not have qualified Spafford to take the BRPT examination immediately following completion of the program.
 {¶ 38} Based on the foregoing, we find that the trial court properly directed a verdict in favor of Tri-C on Spafford's breach of contract claim.
 {¶ 39} Assignment of Error III is overruled.
 C. Fraudulent Mispresentation Assignment of Error IV) {¶ 40} In this assignment of error, Spafford argues that Lucas sent out information materials which fraudulently misrepresented that the polysomnography program at Tri-C was certified by the Ohio Board of Regents and that completion of the program would lead to state registration.
 {¶ 41} Under R.C. 2744.01(C)(2)(c), Tri-C is a political subdivision. Under R.C. 2744.03(A)(6), political subdivision employees acting within the scope of their employment are immune from tort liability as long as they do not act "with malicious purpose, in bad faith, or in a wanton or reckless manner."
 {¶ 42} Here, Tri-C asserts that Spafford did not have any evidence that Lucas acted with malicious purpose, in bad faith, or in a reckless manner. Defendants maintain that all of the actions taken by Lucas were in good faith and within the scope of his employment. In response, Spafford asserts that Lucas acted in bad faith because he knowingly misrepresented the program even after his advisors told him not to do so.[5]
 {¶ 43} Assuming arguendo that Lucas was not immune under R.C.2744.03(A)(6), to establish the tort of fraudulent misrepresentation, Spafford must prove the following elements: (1) a false representation, actual or implied, or a concealment of fact material to a transaction; (2) knowledge of the falsity on the party of the person making the representation, (3) intent to mislead another into relying on the representation, (4) reliance, with a right to do so, by the party claiming injury, and (5) injury resulting from the reliance. Hershman v.University of Toledo (1987), 35 Ohio Misc.2d 11, 17. Applying these standards, we find that the trial court properly directed a verdict in favor of Tri-C. Lucas distributed mailers and information that a certificate would be awarded upon successful completion of the polysomnography program. The mailers did not state that a certificate approved by the OBOR would be earned upon successful completion. The mailers stated that a certificate would be awarded, which in fact, did occur — a certificate of competency.
 {¶ 44} Moreover, Spafford cannot show that her reliance on the informational marketing literature was justified. Spafford interpreted the term "certificate" to mean that the program was being offered as a one-year certificate program. However, no one at Tri-C, including Lucas, ever told Spafford that polysomnography was a one-year certificate program or that she would become registered by the State simply by taking the course. Moreover, Spafford never inquired as to the type of award she would be receiving upon completion of the program.
 {¶ 45} Finally, Spafford cannot show that she suffered any injury. On the contrary, as previously noted in this opinion, Spafford received a significant benefit from completing the polysomnography program at Tri-C. Spafford received a job immediately upon completion of her coursework at the Ohio Sleep Disorders Clinic. Perry, her boss, testified that Spafford received a quality education, which helped her in her current position. Finally, Spafford's 12 months of coursework at Tri-C was credited toward the 18-month employment requirement necessary to take the BRPT registry exam, which she passed in June 2000 and which qualified her to earn a higher salary. Assignment of Error IV is overruled.
 D. Interference with Employment Relationship (Assignment of Error V) {¶ 46} In this assignment of error, Spafford argues that Martin and Lucas engaged in a retaliatory campaign against her to divert students from any sleep clinic in which she worked or sought employment. Specifically, Spafford alleges that Martin, in conjunction with Lucas, contacted her boss in December 2000 regarding concerns Martin had about placing students in a clinical setting with Spafford because of Spafford's "issues" with Tri-C and her potential lawsuit against Tri-C.
 {¶ 47} Under R.C. 2744.03(A)(6), Martin and Lucas are immune from tort liability as long as they do not act "with malicious purpose, in bad faith, or in a wanton or reckless manner." See Ibid.
 {¶ 48} Here, there is no evidence that Martin or Lucas acted with malicious purpose, in bad faith, or in a reckless manner. First, there is no evidence that Lucas participated in or was in any way involved in the discussion Martin had with Perry. With regard to Martin, the record shows that she spoke with Perry about her concerns that Spafford might speak negatively about Tri-C to students who might intern at the Ohio Sleep Disorder Clinic. However, Perry testified that Martin made no disparaging comments about Spafford during their conversation.[6]
 {¶ 49} Assuming arguendo that Martin and Lucas were not immune under R.C. 2744.03(A)(6), to establish the tort of interference, Spafford must prove the following elements: (1) a business relationship, (2) the wrongdoer's knowledge of the relationship, (3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach or terminate a business relationship, (4) lack of privilege, and (5) resulting damages. Brookeside Ambulance, Inc.v. Walker Ambulance Serv. (1996), 112 Ohio App.3d 150, 155-156. The tort of intentional interference occurs when the wrongdoer (1) prevents the plaintiff from performing its own contract or (2) prevents the plaintiff from entering into a prospective contract. Fred Siegel Co.,L.P.A. v. Arter Hadden (1999), 85 Ohio St.3d 171, 178-179.
 {¶ 50} Applying these standards, we find that the trial court properly directed a verdict in favor of Tri-C for the reason that there is no evidence that either Martin or Lucas interfered with Spafford's current employment or any prospective employment. First, Spafford's current employment with the Ohio Sleep Disorder Clinic was not adversely affected by the conversation Martin had with Perry.[7] Second, Spafford has never been turned down from employment as a sleep technician. Thus, other than her subjective belief that other sleep clinics would not want to hire her because Tri-C "controls" all of the sleep clinics in Northeast Ohio, there is simply no evidence that any prospective employment was interfered with. Assignment of Error V is overruled.
 {¶ 51} "VI. The trial court erred as a matter of law by not allowing the jury to determine whether or not attorney fees should be awarded on any of the causes of action advanced by appellant."
 {¶ 52} Our disposition of assignments of error I, II, III, IV, and V renders Assignment of Error VI moot.
Judgment affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, A.J., and Cooney, J., Concur.
[1] Apparently, Spafford's attorney inadvertently mailed a letter about the prospective lawsuit to Dean Meaney that was intended for Spafford.
[2] Tr. 239.
[3] In determining whether an entity has violated the Ohio Deceptive Trade Practices Act, this Court looks at the comparable federal statute, the Lanham Act, e.g., Section 11125(a), Title 15, U.S. Code. See Majcen Associates v. The Phoenix Associates, Inc., 2001-Ohio-4121, Cuyahoga App. No. 76454, citing Cesare v. Work (1987), 36 Ohio App.3d 26, 28;Diamond Company v. Gentry Acquisition Corp., Inc. (1988),48 Ohio Misc.2d 1, 5.
[4] Tr. 251-256.
[5] See Deposition of David Lucas at pgs. 100-102.
[6] Tr. 236.
[7] Indeed, Spafford continues to work with Perry at the sleep clinic at the present time.