[Cite as *Craven v. Aultman College of Nursing & Health Sciences*, 2011-Ohio-4974.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  |  | JUDGES: |
| JAMIE CRAVEN, ET AL | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiffs-Appellants | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2011-CA-00022 |
| AULTMAN COLLEGE OF NURSING | : |  |
| AND HEALTH SCIENCES, ET AL | : |  |
|  | : | O P I N I O N |
| Defendants-Appellees | : |  |


CHARACTER OF PROCEEDING:             Civil appeal from the Stark County Court of
                                     Common Pleas, Case No. 2010CV01841

JUDGMENT:                            Affirmed


DATE OF JUDGMENT ENTRY:              September 26, 2011


APPEARANCES:

For Plaintiff-Appellant              For Defendant-Appellee

RONALD J. HABOWSKI                   RICHARD S. MILLIGAN
Christley, Herington & Pierce        PAUL PUSATERI
215 West Garfield Road, Ste. 230     4518 Fulton Dr. N.W.
Aurora, OH 44202                     P.O. Box 35548
                                     Canton, OH 44735

*Gwin, P.J.*

{¶1} Plaintiffs-appellants Jamie Craven, Amy Liossis, and Jennifer Weaver appeal a summary judgment of the Court of Common Pleas of Stark County, Ohio, entered in favor of defendants-appellees Aultman College of Nursing and Health Sciences and Aultman Hospital. Appellants assign seven errors to the trial court:

{¶2} "I. THE TRIAL COURT ERRED BY FINDING THAT APPELLANTS WERE AWARE THAT AULTMAN'S PROGRAM WAS NOT ACCREDITED AT THE TIME APPELLANTS ENROLLED.

{¶3} "II. THE TRIAL COURT ERRED BY FINDING THAT AULTMAN INFORMED APPELLANTS DURING ORIENTATION THAT AULTMAN COULD NOT ASSURE ACCREDITATION WOULD BE IN PLACE BY THE TIME OF GRADUATION.

{¶4} "III. THE TRIAL COURT ERRED BY FINDING APPELLANTS WERE NOTIFIED BY AULTMAN'S ADMINISTRATION, WHO SENT OUT AN INFORMATION PAMPHLET AND HELD SEVERAL SMALL GROUP QUESTION AND ANSWER SESSIONS REGARDING ACCREDITATION, THAT THE ACCREDITATION PROCESS MIGHT NOT BE COMPLETED BY THE TIME THEY GRADUATED.

{¶5} "IV. THE TRIAL COURT ERRED BY FINDING APPELLANTS COULD NOT SHOW THAT THEY HAD BEEN DENIED POSITIONS, OR EVEN CONSIDERATION FOR POSITIONS, DUE TO GRADUATING FROM AN UNACCREDITED PROGRAM.

{¶6} "V. THE TRIAL COURT ERRED BY FINDING THAT APPELLANTS COULD NOT SHOW THAT THEY HAD BEEN DENIED ENTRY TO A

BACCALAUREATE PROGRAM IN NURSING AND THAT THEIR CREDIT HOURS WOULD NOT TRANSFER.

{¶7} "VI. THE TRIAL COURT ERRED BY FINDING APPELLANTS PROVIDED NO EVIDENCE OF ANY DAMAGES, THAT THEY CLAIM TO HAVE SUFFERED.

{¶8} "VII. THE TRIAL COURT ERRED IN FINDING THERE WAS NOT A MATERIAL FACT SUBMITTED FOR THE COURT'S DELIBERATION."

{¶9} The record indicates appellants applied for admission to the Aultman College of Nursing's two-year program in 2005. In 2005, the last class of Aultman School of Nursing was completing its course work while the newly formed College of Nursing was accepting its first class. The School of Nursing awarded its graduates a diploma, while the College of Nursing anticipated awarding associate degrees. Because the program was new, the College was in the process of applying for accreditation from the National League of Nursing Accrediting Commission and the Higher Learning Commission, but had not yet received accreditation.

{¶10} The College of Nursing was not accredited when appellants' class graduated.

{¶11} Appellants filed their complaint on May 10, 2010. They alleged they were not aware of the difference between Aultman School and Aultman College, and they assumed Aultman College was an accredited nursing program, as Aultman's School had been. They alleged accreditation was important because most institutions will not accept transfer of class credits from an unaccredited institution and most employers would not employ nurses who graduated from an unaccredited institution. They alleged Aultman College knew or should have known it would not be accredited by the time

appellants graduated, but nevertheless represented to appellants the program would be accredited by the time they graduated. The complaint alleged the issue of accreditation was raised during appellants' first semester of classes, in the fall of 2005, when Aultman College represented to the students that it would receive accreditation. The complaint alleged it was not until their third semester in fall 2006, that Aultman College finally informed appellants that the program would not be accredited by the time they graduated.

**{¶12}** Appellants' complaint alleged eight causes of action: Breach of Contract; Promissory Estoppel; Fraud; Negligent Misrepresentation; Civil Conspiracy; Violation of Revised Code Section 4165.02; and Negligence. Appellants individually demanded judgment in an amount exceeding $25,000, plus punitive damages, reasonable attorney fees, costs and any further remedy or relief the court deemed just.

**{¶13}** The trial court's judgment entry of January 12, 2011, found there was no question of material fact as to any of appellants' claims. The court made what it referred to as "key" findings:

**{¶14}** (1) Appellants had not entered into a contract to attend appellees' nursing program until they enrolled in March 2005.

**{¶15}** (2) During their depositions, appellants admitted they knew that Aultman's program was not accredited when they enrolled.

**{¶16}** (3) Aultman's administration sent out an informational pamphlet giving Appellants notice that the accreditation process might not be completed by the time they graduated and had several small-group question and answer sessions about accreditation.

**{¶17}** (4) Aultman informed appellants during orientation that Aultman could not assure accreditation would be in place by the time of graduation.

**{¶18}** (5) Appellants are all currently employed as nurses, two with Aultman Hospital and one with Nationwide Children's Hospital in Columbus. None could show they had been denied positions, or even consideration for possessions, because they graduating from an unaccredited program.

**{¶19}** (6) None of the appellants could show that they had been denied entry to a baccalaureate program in nursing, or that if they were, their credit hours would not transfer because they from an unaccredited program.

**{¶20}** (7) Appellants provided no evidence of any damages.

**{¶21}** The court concluded appellees were entitled to judgment as a matter of law.

**{¶22}** Civ. R. 56 states in pertinent part:

**{¶23}** "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor. A summary

judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

**{¶24}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the undisputed facts, *Houndshell v. American States Insurance Company* (1981), 67 Ohio St. 2d 427. The court may not resolve ambiguities in the evidence presented, *Inland Refuse Transfer Company v. Browning-Ferris Industries of Ohio, Inc.* (1984), 15 Ohio St. 3d 321. A fact is material if it affects the outcome of the case under the applicable substantive law, *Russell v. Interim Personnel, Inc.* (1999), 135 Ohio App. 3d 301.

**{¶25}** When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court, *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St. 3d 35. This means we review the matter de novo, *Doe v. Shaffer,* 90 Ohio St.3d 388, 2000-Ohio-186.

**{¶26}** The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim, *Drescher v. Burt* (1996), 75 Ohio St. 3d 280. Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist, Id. The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary material showing a genuine dispute over material facts, *Henkle v. Henkle* (1991), 75 Ohio App. 3d 732.

## I, II, & III

{¶27} In their first assignment of error, appellants assert the court erred in finding it was undisputed that they knew Aultman's program was not accredited when they enrolled. In the second assignment of error they challenge the court's finding that the agents of the College told the students at orientation that they could not assure the students that the program would be accredited by the time they graduated.

{¶28} Appellant Craven and appellant Weaver testified in their depositions that the subject of accreditation was discussed at orientation. Appellant Liossis testified she did not recall the matter being mentioned at that time, but was aware of the issue by October of that year, when she was approached by other students. Liossis testified the other students were concerned about how the lack of accreditation would affect their future employment and future education. Liossis testified at least one other student contacted the State of Ohio regarding the accreditation process. In her deposition Liossis testified at some later time in the first semester, she learned the College would not be accredited by the time she graduated, and she believed this information had circulated among the students.

{¶29} Appellants Craven and Weaver both testified after attending the orientation they believed the College would be accredited by the time they graduated. All three testified appellees reassured them accreditation would not be a problem, but no one testified the College guaranteed it would be accredited by the time they graduated.

{¶30} Rebecca Crowl, president of the College of Nursing, deposed she told the students at orientation the College was in the process of obtaining accreditation, and the College's plan was to be accredited by the time its first class graduated.

{¶31} Appellants argue the record shows appellees never told them the program was not accredited. They argue reasonable minds could differ on whether appellants should have understood, from the information they were given, that the program was not accredited, and should have appreciated the impact the lack of accreditation might have on the value of their associate degrees.

{¶32} In their third assignment of error appellants argue the court erred in finding that in the fall of 2005, the College distributed pamphlets and held small group sessions to discuss the fact the accreditation process might not be completed by the time they graduated. Appellants raise two arguments: first, the very fact appellees felt it was necessary to provide more information demonstrates that they knew they had not answered the students' questions at orientation, and secondly, that the information the College gave the students in the pamphlets and in the small groups did not respond to the questions of whether the program would be accredited and what the consequences would be if it were not accredited by the time they graduated.

{¶33} The pamphlet advised the students they would be eligible to sit for the Ohio licensing examination but might have problems with other states. It advised them it was working with Walsh College to accept transfer of the credits earned at Aultman to apply to Walsh's baccalaureate program. It also advised that Aultman would employ any graduate who completed an application prior to graduation, upon the graduate's receipt of his or her RN license. Appellants urge this offer is illusory because a student could

not receive a license until after graduation. This is a misreading of the offer. Aultman only required the student to apply before graduation; the student was not required to actually have the license when he or she completed the application, but needed to be licensed in order to be employed as an RN.

{¶34} We find the court did not err. The record demonstrates appellees gave no false information and took steps to inform its students about the status of the accreditation process. The record shows that early in their studies appellants knew the program would not be accredited.

{¶35} The first, second, and third assignments of error are overruled.

IV & V

{¶36} In their fourth assignment of error appellants argue the court erred in finding they could not show the lack of accreditation had a negative impact on their employment prospects. The court found appellants could not show potential employers did not consider them for positions, and could not show they were denied positions. In their fifth assignment of error they urge that construing the evidence most strongly in their favor, reasonable minds could come to different conclusions as to whether they would be accepted into a baccalaureate program and receive transfer credits earned from appellees.

{¶37} In their depositions appellants testified they could not say their applications were rejected by any potential employer because of their credentials. Some of the institutions to which they applied did not respond, but appellants did not know why. Each of the appellants was employed, and only appellant Liossis testified she had applied to a baccalaureate program. Walsh College accepted her and gave her full

credit for the classes she took at Aultman College. The other two appellants had not applied to any baccalaureate program at the time they were deposed.

**{¶38}** We agree with the trial court appellants did not produce evidence their employment prospects were diminished because the College was not accredited. The only evidence before the court demonstrated they were employed and at least one had transferred her credits to a baccalaureate program. At most, appellants asked the trial court and this court to speculate that their future options might be limited.

**{¶39}** The fourth and fifth assignments of error are overruled.

VI.

**{¶40}** In their sixth assignment of error, appellants argue the trial court erred in finding they had suffered no damage as a result of appellees' actions. The trial court found a showing of damages is an essential element to a claim for breach of contract, fraud, promissory estoppel, negligent misrepresentation, and ordinary negligence. Judgment Entry at page 3, citations deleted. The court found none of the appellants had provided any evidence of any damages, although they speculate it may be harder to find employment in the nursing field or more difficult to gain admittance into a baccalaureate program in nursing.

**{¶41}** The trial court found the Ohio Consumer Sales Practice Act provides for private remedies for violations which include actual economic damages. Judgment Entry at page 4, citing R.C. 1345.09. The court found appellants had brought no evidence of actual economic damages, and found appellees did not act in an unfair deceptive or unconscionable manner. The court found appellees had taken several

opportunities to inform its nursing students that accreditation was not guaranteed, and the court found appellants continued in the program despite having been informed.

**{¶42}** The trial court found under the Ohio Deceptive Trade Practices Act, a plaintiff must prove (1) a false statement or statement which is misleading; (2) which statement actually deceived or has the tendency to deceive a substantial segment of the target audience; (3) the deception is material in that it is likely to influence a purchasing decision; and the plaintiff has been or is likely to be injured as a result. Judgment Entry at page four, citing R.C. 4165.02. The court found there were no deceptive acts and no damages, and found appellants had not shown they were likely to suffer damages in the future.

**{¶43}** Appellees cite us to *Spafford v. Cuyahoga Community College* Eighth Dist. App. No. 84786, 2005-Ohio-1672, where the college advertized it awarded a "certificate" for completion of its polysomnography program but issued Spafford a "competency award". The court of appeals found no violation of R.C. 4165.02, because the college never stated that program was approved by the Board of Regents or that completion of program would result in automatic registration by the State of Ohio. The court found the competency award was a form of certificate. The court found Spafford had received significant benefits from her education, because she obtained a job immediately upon completion of her course work, and the time she spent on course work was credited toward the 18-month employment requirement to take the registry examination. We agree the *Spafford* case is similar to the case at bar.

**{¶44}** The trial court found a claim for civil conspiracy required proof of four elements: a malicious combination of two or more persons, resulting in injury to a

person or property, and the existence of an unlawful act independent of the actual conspiracy. Judgment entry at page four, citing *Davidson v. BP America, Inc.* (1997), 125 Ohio App. 3d 643, 652. The court found there had been no showing of any injury to person or property, and there was no evidence of an unlawful act.

**{¶45}** Appellants argue the trial court looked to what they actually received, and did not address what they did not receive in this case. Appellants argue the trial court reasoned that because they were all working as registered nurses, they received the benefit of the bargain they entered into in March 2005 and would not incur any damages. Appellants assert as a matter of law they did not need an associate degree to be qualified to take the examination to obtain an R.N. license, and the fact they had passed the examination did not demonstrate the value of their associate degrees. Appellants argue the President of the College, Rebecca Crowl, testified all health-care professionals should have at a minimum a baccalaureate degree.

**{¶46}** Appellants argue there is sufficient non-speculative evidence for a jury to find appellants did not receive what they had bargained for when they entered the program. We do not agree.

**{¶47}** We agree with the trial court appellants were aware of the issues surrounding accreditation early in their schooling and continued to attend the College. We agree the record contains only evidence they were aware there was a chance they might not receive their associates degree from an accredited college.

**{¶48}** Appellants also argue a jury could conclude the appellants would have to repeat their freshman and/or sophomore years in order to obtain a bachelor's degree in nursing. However, of three appellants, only appellant Liossis had attempted to obtain a

bachelor of science in nursing, and she testified Walsh University accepted all the course work in everything she had done at Aultman College, and she was on course to graduate on schedule. She testified in her deposition her bachelor's degree would be an accredited degree and she planned to go on, get a master's degree, and teach at some point in the future. We find a jury could not conclude the appellants might not get credit for the schooling they had received.

**{¶49}** None of the three appellants could testify they were denied employment because their associate degree did not come from an accredited institution. There is no evidence in the record to support their claim their employment prospects were diminished.

**{¶50}** We find the trial court did not err in finding appellants had not come forward with evidence of any damages.

**{¶51}** The sixth assignment of error is overruled.

VII

**{¶52}** In their seventh assignment of error appellants argue the court erred in finding there were no genuine issues of material fact. Appellants assert the court did not construe the evidence and the reasonable inferences to be drawn most strongly in their favor. We do not agree. The inferences appellants ask us to draw are unsupported by the record and are speculative in nature. In some instances the arguments appellants advance directly contradict the deposition evidence in the record. Based upon the record as developed in the trial court we agree with the court reasonable minds could not differ on any material fact.

**{¶53}** The seventh assignment of error is overruled.

**{¶54}** For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

By Gwin, P.J., and

Farmer, J., concur;

Hoffman, J., concurs

separately

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER

WSG:clw 0829

*Hoffman, J., concurring*

(¶55) I concur in the majority's analysis and disposition of Appellant's sixth assignment of error. I would find all of Appellant's other assignments of error moot based upon the two-issue rule.

_____

HON. WILLIAM B. HOFFMAN

[Cite as *Craven v. Aultman College of Nursing & Health Sciences*, 2011-Ohio-4974.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| JAMIE CRAVEN, ET AL | : | |
| | : | |
| Plaintiffs-Appellants | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| AULTMAN COLLEGE OF | : | |
| NURSING AND HEALTH | : | |
| SCIENCES, ET AL | : | |
| | : | |
| | : | |
| Defendants-Appellees | : | CASE NO. 2011-CA-00022 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed. Costs to appellants.

_____
HON. W. SCOTT GWIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER