PACIFIC CHEMICAL PRODUCTS COMPANY, APPELLANT, *v.* TELETRONICS SERVICES, INC. ET AL., APPELLEES.

(No. 49667 — Decided October 15, 1985.)

*Leonard W. Yelsky,* for appellant.
*Martin J. Murphy* and *Donald Martell,* for appellee Teletronics Services, Inc.
*Charles M. Rosenberg* and *Barbara Friedman Yaksic,* for appellee Allnet Communications Services.
*Thomas A. Linton,* for appellee Ohio Bell Telephone Co.

PRYATEL, J. On May 18, 1984, Pacific Chemical Products Company ("Pacific"), plaintiff-appellant, filed a complaint against Teletronics Services,

Inc. ("Teletronics"), Allnet Communications Services, Inc. ("Allnet") and Ohio Bell Telephone Company ("Ohio Bell"), defendants-appellees, for breach of the implied warranties of merchantability and fitness for a particular purpose. The complaint alleged that Pacific, which is "in the business of telemarketing chemical products throughout the United States," purchased telephone equipment· from Teletronics. It further alleged that Allnet agreed to furnish long distance telephone lines and that Ohio Bell was to install a WATS line for plaintiff.

According to plaintiff, it encountered numerous problems (allegedly attributed to the defendants' breach of warranties) with its communication system causing Pacific "irreparable harm and damage" in the amount of $38,000,000. In particular, Pacific alleged: (1) that Teletronics wilfully misrepresented that the phone system it sold to Pacific was the "perfect" phone system that "would do a better job" than the equipment Pacific had, and that it could be used by twenty people, when in fact only four people had access to the system; (2) Allnet wilfully misrepresented that the long distance lines it installed would "have clear access, transmission and reception on an equal grade with the Ohio Bell Telephone Company's WATS line" and would work in conjunction with the installed Teletronics system; and (3) Ohio Bell agreed to install a special WATS line by October 1, 1983 but did not do so until January 1984.

On June 21, 1984, Ohio Bell filed a Civ. R. 12(B)(1) motion to dismiss plaintiff's complaint for the reason that the claims asserted were within the exclusive jurisdiction of the Public Utilities Commission of Ohio ("PUCO").

On July 20, 1984, Allnet filed a separate Civ. R. 12(B)(1) motion to dismiss contending that the Federal Communications Commission ("FCC") had primary jurisdiction over plaintiff's claims.

Thereafter, Teletronics filed a motion to dismiss pursuant to Civ. R. 19(B). According to Teletronics, Ohio Bell and Allnet are indispensable parties without whom a fair and equitable proceeding could not be had. Therefore, Teletronics asked that the action be dismissed without prejudice so that it could be recommenced in the proper forum.[1]

On December 20, 1984, the trial court granted each defendant's motion to dismiss.

Plaintiff filed a timely appeal, assigning one error.

Assignment of Error No. I

"The trial court committed reversible error when it granted the defendants' motions to dismiss plaintiff's complaint if [sic] said motions being based upon the contention that the court of common pleas did not have jurisdiction to hear plaintiff's complaint."

In deciding whether the court of common pleas correctly dismissed appellant's complaint for lack of subject matter jurisdiction, we must determine if appellant has alleged any cause of action cognizable by the forum in which the complaint was filed. *Steffen* v. *General Telephone Co.* (1978), 60 Ohio App. 2d 144, 145 [14 O.O. 3d 111]. Appellee Ohio Bell (in its motion to dismiss and on appeal) contends that the PUCO is vested with the exclusive power and jurisdiction to resolve appellant's claim (as it relates to Ohio Bell). Appellee Allnet maintains that the controversy falls within the scope of the FCC's jurisdiction. These contentions will be addressed separately.

---

[1] Appellee Teletronics concedes in its appeal brief that there is no issue for it to argue on appeal since its motion to dismiss was founded on the issue of joinder rather than lack of subject matter jurisdiction. Hence, this matter does not require further consideration.

### (A) Jurisdiction of the Public Utilities Commission (Ohio Bell)

Chapter 4905 of the Revised Code vests the PUCO with the authority and power to supervise all public utilities within its jurisdiction, and to ensure that the public utilities "furnish [to their customers] necessary and adequate service and facilities * * *." (R.C. 4905.22.)

R.C. 4905.26 sets forth the procedure to challenge the adequacy of such service and facilities. It states in pertinent part:

"Upon complaint in writing against any public utility by any person, firm, or corporation, * * * *that any * * * service is, or will be, inadequate or cannot be obtained,* * * * if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing and shall notify complainants and the public utility thereof, and shall publish notice thereof in a newspaper of general circulation in each county in which complaint has arisen. * * * " (Emphasis added.)

The Ohio Supreme Court, in *State, ex rel. Northern Ohio Telephone Co.,* v. *Winter* (1970), 23 Ohio St. 2d 6 [52 O.O. 2d 29],[2] interpreted Chapter 4905 of the Revised Code and concluded that:

"*The General Assembly, by the enactment of statutory provisions* requiring a public utility to file and adhere to rate schedules, forbidding discrimination among its customers, prohibiting free service, and *providing a detailed procedure for service* and rate *complaints, has lodged exclusive jurisdiction in such matters in the Public Utilities Commission,* subject to review by the Supreme Court." (Emphasis added.) *Id.* at paragraph one of the syllabus.

"The General Assembly['s] * * * comprehensive plan * * * does not include proceedings in the Court of Common Pleas." *Id.* at 10; see, also, *Assoc. Motor Inns Co.* v. *Columbia Gas of Ohio, Inc.* (May 4, 1978), Cuyahoga App. No. 37277, unreported.

Appellant concedes that the PUCO has exclusive jurisdiction where complaints regarding the quality of phone service are alleged. Nevertheless, appellant contends that since it is a "defunct corporation" it could not benefit from any remedial orders issued by the commission; hence the provisions governing phone service quality are inapplicable.

Nowhere in the complaint does appellant allege that it is a "defunct corporation." Although the trial court is not confined to the allegations of the complaint when determining its subject matter jurisdiction (*Southgate Development Corp.* v. *Columbia Gas Transmission Corp.* [1976], 48 Ohio St. 2d 211 [2 O.O. 3d 393]), the nature of appellant's complaint (that Ohio Bell failed to supply appellant with a WATS line by a certain date) concerns the adequacy of phone service. Since phone service quality is being challenged, regardless of whether appellant is a "defunct corporation," the claims raised against appellee Ohio Bell fall exclusively within the PUCO's purview. See *Steffen* v. *General Telephone Co., supra,* at 146.

Appellant next contends that "the statutory provisions do not provide for money damages in the amount of plaintiff's [appellant's] loss."

Pursuant to R.C. 4905.61,[3] an injured party is entitled to bring an action against a utility company for *treble*

---

[2] In *Winter,* a telephone customer sought an injunction and damages for inadequate service and unreasonable rates. The court of common pleas granted a temporary restraining order. The Supreme Court allowed the telephone company's petition for a writ of prohibition on the ground that the court of common pleas lacked subject matter jurisdiction.

[3] R.C. 4905.61 states in relevant part:

"If any public utility * * * does, or causes to be done, any act or thing prohibited by Chapters 4901., 4903., 4905., 4907., 4909.,

damages whenever a public utility company is found by the commission to have done any act prohibited by statute or has omitted to do anything required thereunder. *Milligan* v. *Ohio Bell Tel. Co.* (1978), 56 Ohio St. 2d 191, 194 [10 O.O. 3d 352]; *North Ridge Invest. Corp.* v. *Columbia Gas* (1973), 49 Ohio App. 2d 74, 76 [3 O.O. 3d 131]. Thus, not only does a claimant have the opportunity to recover money damages, but the damages given by statute are actually tripled in amount. Treble damages are awarded to deter statutory violations by utilities and to fully compensate parties injured by the acts of utilities. *Federal Reserve Bank of Cleveland* v. *Purolator Courier Corp.* (1983), 13 Ohio App. 3d 296, 300; *Lahke* v. *Cincinnati Bell, Inc.* (1981), 1 Ohio App. 3d 114, 117; *Ohio Public Interest Action Group* v. *Pub. Util. Comm.* (1975), 43 Ohio St. 2d 175, 185 [72 O.O. 2d 98].

Under these circumstances, appellant can hardly complain that Chapter 4905 provides inadequate compensation.

We conclude that the action against Ohio Bell falls solely within the jurisdiction of the PUCO. The trial court was therefore warranted in dismissing appellant's complaint against Ohio Bell for lack of subject matter jurisdiction.

### (B) Jurisdiction of the Federal Communications Commission (Allnet)

Appellee Allnet's motion to dismiss is premised on the theory that the FCC has primary jurisdiction over appellant's claims pursuant to the federal Communications Act of 1934, as amended, Sections 151-609, Title 47, U.S. Code.

The doctrine of primary jurisdiction is deferential in nature: the issues raised are first subject to administrative determination and then to judicial review. *Citibank* v. *Graphic Scanning Corp.* (C.A. 2, 1980), 618 F.2d 222, 224. Hence,

" * * * primary jurisdiction is properly invoked whenever the enforcement of a claim, which is originally cognizable in the courts, requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body. The doctrine is grounded upon the necessity for administrative uniformity and the need for administrative skill found only in a body of experts capable of handling the intricate facts of a particular case. See *United States* v. *Radio Corporation of America,* 358 U.S. 334, 346, 79 S.Ct. 457, 3 L.Ed. 2d 354 (1959); *Texas & Pacific Ry. Co.* v. *Abilene Cotton Oil Co.,* 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907)." *Western Union Telegraph Co.* v. *Graphic Scanning Corp.* (S.D.N.Y. 1973), 360 F. Supp. 593, 595; see, also, *Far East Conference* v. *United States* (1952), 342 U.S. 570, 574-575.

The test for determining whether primary jurisdiction applies is "whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States* v. *Western Pacific RR. Co.* (1956), 352 U.S. 59, 64. In this case the reason to invoke the doctrine is the need for uniformity and expertise to resolve the complex issues presented (*i.e.,* regarding access, reception and transmission). As stated in *In re Long Distance Telecommunications Litiga-*

---

4921., 4923., and 4925. of the Revised Code, or declared to be unlawful, or omits to do any act or thing required by such chapters, or by order of the public utilities commission, such public utility * * * is liable to the person, firm, or corporation injured thereby in treble the amount of damages sustained in consequence of such violation, failure, or omission. Any recovery under this section does not affect a recovery by the state for any penalty provided for in such chapters."

*tion* (E.D. Mich. 1984), 598 F. Supp. 951, 954:

" * * * The Federal Communications Act of 1934, which sets forth a comprehensive scheme of federal law governing charges, practices, duties and liabilities of interstate telecommunications carriers in connection with a carrier's provision of interstate long distance service to its customers, would surely be thwarted if the Federal Communications Commission, the primary enforcement agency under the Act, is vulnerable to contradictions and inconsistent adjudications in the courts of the fifty states. * * *

" * * * To permit the possibility that defendants herein would be required to provide long distance service under differing sets of rules in different states would be to ignore Congress' recognition in the Communications Act of the need for comprehensive regulations as well as the practical difficulties inherent in state-by-state regulation of such an industry. The ultimate and inevitable losers in such a process would be the consumers which plaintiff seeks to represent."

Despite the apparent need to give deference to the FCC, appellant contends that its claims (breach of contract and negligence) are outside the scope of the FCC's jurisdiction. To support its position appellant relies primarily on the cases of *Radio Station WOW, Inc.* v. *Johnson* (1945), 326 U.S. 120, and *Regents of the Univ. System of Georgia* v. *Carroll* (1950), 338 U.S. 586, which concern the private contract rights of persons dealing with broadcast licensees.[4] In these decisions, the court concluded that the FCC has no authority to deter-

mine the validity of contracts between licensees.

These decisions are inapposite to the case at bar. The instant case does not involve the interplay between licensees' contracts and the federal Communications Act, but instead concerns the quality of phone service provided by appellee to one of its customers. Moreover, in *Radio Station WOW, Inc.* v. *Johnson, supra,* both parties conceded that the FCC lacked subject matter jurisdiction over their suit. Hence, subject matter jurisdiction was not at issue.

We find that the decision of *Ivy Broadcasting Co.* v. *American Telephone and Telegraph Co.* (C.A. 2, 1968), 391 F.2d 486, is controlling. In *Ivy Broadcasting Co.,* a radio broadcasting company brought suit against the telephone company for negligence and breach of contract in the rendition of interstate telephone service. The district court dismissed the complaint on the ground that the case did not arise out of the federal Communications Act but instead was based on the state law of torts and contracts. The appellate court reversed, noting that the case involved a federal question, and that the Communications Act was intended "to occupy the field to the exclusion of state law." *Id.* at 490.

The court phrased the issue as follows:

"In the absence of any statutory provision relating to a carrier's liability for negligence or breach of contract, the courts must determine whether these questions should be left to state law or whether the federal interest in the result of such cases is so great that they should be controlled by federal common law. See *Clearfield Trust Co.* v. *United*

---

[4] Appellant also cites to *Southgate Development Corp.* v. *Columbia Gas Transmission Corp., supra,* and *New Breman* v. *Pub. Util. Comm.* (1921), 103 Ohio St. 23. These cases involved actions before the

Public Utilities Commission and deal with regulation of gas lines rather than telephonic communication. They are inapplicable to the case at bar.

*States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943).

" * * *

" * * * The question then is whether the federal statutory scheme for the regulation of interstate communications service indicates a congressional policy requiring that the duties and liabilities under contracts for the provision of such service be determined according to federal rules in order to assure uniformity of rates and service." *Id.*

In recognizing the importance of uniformity in interstate communications, the court concluded that "questions concerning the duties, charges and liabilities of telegraph or telephone companies with respect to interstate communications service are to be governed solely by federal law and that the states are precluded from acting in this area. * * *" *Id.* at 491. See, also, *In re Long Distance Telecommunications Litigation, supra.*

Appellant interprets Section 414, Title 47, U.S. Code, to provide that the instant action should be brought in state court. This section states:

"Nothing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies."

Although the Act does not affect common-law remedies, it is clear under the *Ivy* decision, *supra,* that federal common law (and not state common law) would govern. Appellant's argument is therefore without merit.

Nor are we persuaded by appellant's position that the only forum in which to institute an action for damages is in state court. Section 206, Title 47, U.S. Code provides for monetary damages where a common carrier is found to have violated any section of the Act.[5] Hence, a claimant can be fully compensated under federal law.

Since the instant case involves a federal question which is governed by the FCC, we conclude that the trial court was warranted in dismissing appellant's complaint as it applies to Allnet.

Appellant's assignment of error is overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

MARKUS, P.J., and PATTON, J., concur.

---

[5] Section 206 states:

"In case any common carrier shall do, or cause or permit to be done, any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, together with a reasonable counsel or attorney's fee, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."

The procedure for filing a complaint to the commission is found in Section 208 of the Act.