**Malone v. Academy of Court Reporting**
*[Cite as 8 AOA 533]*

*Case No. 90AP-264, 90AP-430*
*Franklin County, (10th)*
*Decided December 31, 1990*

*Walter G. Brooks, Winkfield & Brooks Co., L.P.A., for Appellants.*

*Thomas P. Marotta, Gruber, Moriarty, Fricke & Jaros, for Appellees.*

REILLY, P.J.

This is an appeal from a judgment of the Franklin County Court of Common Pleas dismissing plaintiffs' second amended complaint on the basis of Civ. R. 12(B) (6) and striking the complaint from the files. Plaintiffs frame three "Issues Presented for Review," which we will consider as assignments of error:

"1. Whether the trial court lacked subject matter jurisdiction.

"2. Whether the trial court erred in ruling that Plaintiffs-Appellants' claims of consumer fraud, fraudulently inducement to enter contracts and breach of contract are not cognizable under Ohio law.

"3. Whether the trial court erred in ruling that the Ohio General Assembly, in recognition of sound public policy, has committed the regulations of proprietary schools to the State Board of Schools and College Registration."

Plaintiffs are a group of former students who enrolled with defendant, Academy of Court Reporting. The academy is a private school marketing and operating a paralegal curriculum in Columbus, Ohio. Plaintiffs instituted this action against the academy on October 27, 1988. Plaintiffs' second amended complaint, which is the subject of this appeal, was filed on November 8, 1989. The trial court ordered the clerk to accept this complaint on November 8, 1989.

The second amended complaint alleges the following facts. In 1987, the academy solicited plaintiffs to induce them to enroll in the school's paralegal curriculum at $1,200 per quarter tuition. The academy solicited students by mail, telephone, advertising presentations, and door-to-door canvassing, all in an effort to schedule potential students for enrollment interviews. During the course of these interviews and presentations, the academy represented that successful completion of its paralegal curriculum would yield an associate's degree in paralegal studies, that the school had job placement services, and that commencing salaries upon completion of the course work were guaranteed at or around $20,000 to $25,000 per year. The academy also represented that its school was intense, describing it as "the Harvard of paralegal schools." Further, the academy represented that the school had admission standards, a financial aid program, training courses in both Westlaw and Lexis, library facilities, and that hours were transferable to the Ohio State University.

In 1988, plaintiffs learned that the academy had not been certified or accredited to issue an associate degree for paralegal

studies by the State Board of School and College Registration. After inquiring about this, plaintiffs were allegedly given misleading and inaccurate answers from the school. Eventually, all of the plaintiffs withdrew from the school except one. This one student, like the others, has been unable to secure any employment as a paralegal despite the $11,000 tuition she had paid to the school.

The second amended complaint includes eight individual counts against the academy, representing the combined claims of plaintiffs Lori Malone, Kim Mamone, Heidi Sheppard, Cinda Cason, and Angel Mason. In these counts, plaintiffs allege fraud, breach of contract, violations of the Ohio Consumers Sales Practices Act, R.C. 1345.01 *et seq.,* and violations of the Ohio Home Sales Solicitation Act, R.C. 1345.23(B).

As to plaintiffs' allegations of the second amended complaint, the trial court wrote in its decision of January 12, 1990:

"These allegations are not cognizable by this Court because the legislature, in recognition of sound public policy, has committed the regulation of such a school as at hand to the State Board of School and College Registration. ***." After noting the persuasive regulatory powers of the board, the court wrote:

"*** Where such a regulatory scheme exists, the Court should defer to the administrative agency. See *Pacific Products v. Teletronics Services* (1985), 29 Ohio App. 3d 45, 48, as the United States Supreme Court notes in *United States v. Western Pacific R. Co.* (1959), 352 U.S. 59, 64:

"'... in such a case, the judicial process is suspended pending referral of such issues to the administrative body for its views.'" Further, the court stated:

"The evaluation of the educational services provided by the Academy requires the expertise of professional educators and, for this reason, was entrusted to the Board of School and College Registration. The legislature had delegated to the Board of Schools and College Registration those determinations called for by the Complaint and Amended Complaint. As was observed in *Paladino v. Adelph [sic] University,* 454 N.Y.S. 2d 868, 7 Ed. Law. Rep. 191 (NY App. 1982), 'The quality of the education and qualifications of the teachers employed by the private school are concerns not for the courts, but rather for the State Education Department and its commissioner.'"

Thus, the trial court sustained the academy's motion to dismiss the complaint and motion to strike the complaint from the files.

Plaintiffs contend in their assignment of error that the delegation of power to the board of accreditation should not preclude or delay the relief requested in this case.

Apparently, the trial court concluded that, since the legislature committed the regulation and accreditation of private schools to the jurisdiction of the board, common law or statutory claims against regulated schools were abrogated or precluded. The trial court cited two "primary jurisdiction" cases to support its conclusion. In one case, the often-cited *United States v. Western Pacific R. Co.* (1959), 359 U.S. 59, the United States Supreme Court explains the doctrine of primary jurisdiction as follows:

"The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrative body for its views. ***

"No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would obtain if initially a specialized agency passed on certain types of administrative questions. *** More recently the expert and specialized knowledge of the

agencies involved has been particularly stressed. \*\*\*" *Id.* at 63-64. (Citations omitted.)

While several Ohio cases have applied the doctrine of primary jurisdiction to state claims in the context of federal regulation, no Ohio case thus far has applied this principle of federal administrative law in connection with Ohio administrative agencies. See *Pacific Products, supra; Cleveland Electric Illum. Co. v. Cleveland* (1976), 50 Ohio App. 2d 275. Cf., *Franklin County Sheriff's Dept. v. Fraternal Order of Police, Capital City Lodge No. 9* (Jan. 23, 1990), Franklin App. No. 89AP-498 (1990 Opinions 148). Even if we were to recognize the doctrine, it would not be applicable in this case. There is no evidence herein of any overriding need for uniformity or that the agency has some special expertise concerning the subject matter of plaintiffs' complaint. Plaintiffs' complaint alleges common law and statutory claims.

There is no indication in the applicable statutes that the legislature intended the agency to have primary jurisdiction. R.C. Chapter 3332, which governs certification of private schools, provides a remedy in the form of a bond for tuition reimbursement on account of fraud or misrepresentation used in procuring enrollment. See R.C. 3332.08. The liability of the school is limited to $10,000 in the aggregate for all students. This is well under the amount claimed by plaintiffs in this case. Moreover, R.C. 3332.13 assures a right of recovery despite the bond. This section states:

"The fact that a bond is in force pursuant to section 332.10 [sic] of the Revised Code does not limit nor impair any right of recovery otherwise available pursuant to law, nor is the amount of such bond relevant in determining the amount of damages or other relief to which plaintiff may be entitled."

In sum, there is no express or implied indication that the board has either exclusive or primary jurisdiction over this claim. The only conclusion which can be drawn is that the legislature did not intend to extinguish or impair other remedies in this case. An existing common-law remedy may not be extinguished by a statute except by direct enactment or necessary implication. *Helmich v. Cincinnati Word Processing, Inc.* (1989), 45 Ohio St. 3d 131.

Plaintiff's third assignment of error is well-taken.

Plaintiffs' first and second assignments of error involve the court's second basis for dismissing the complaint: "that plaintiffs failed to state a cause of action."

The parties do not dispute that the question raised on a motion to dismiss, pursuant to Civ. R. 12(B)(6), is whether it appears beyond doubt that plaintiffs can prove no set of facts entitling them to recovery. *O'Brien v. Univ. Community Tenants Union* (1975), 42 Ohio St. 2d 242.

Plaintiffs have alleged claims of breach of contract, misrepresentation, and violation of the consumer protection laws. Defendants claim that all of these claims are barred by public policy. Defendants maintain that plaintiffs are really presenting a claim for "educational malpractice," which has not been recognized in Ohio or by any other court in the nation. Defendants rely on *Paladino v. Adelphi University* (App. 1982), 454 N.Y.S. 2d 246, which was cited by the trial court, for the proposition that any allegation directed to the adequacy or quality of education received is essentially a claim for educational malpractice which must be barred on public policy grounds.

The so-called educational malpractice claim has not been well received by the few courts which have addressed the issue. See Valente, *Education Law, Public and Private* (1985), Vol. 2, §19.71, at 269-273; Comment, *Educational Malpractice Update* (Fall 1984), 14 Cap. U.L. Rev. 609. The Seventh District Court of Appeals of Ohio affirmed a motion to dismiss a complaint filed against the Steubenville Board of Education where the plaintiff alleged that he was promoted through high school as an athlete without every being taught how to read and write. *Denson v. Steubenville Bd. of Edn.* (July 29, 1986), Jefferson App. No. 85-J-31, unreported.

In this case, however, plaintiffs have not mentioned educational negligence or malpractice anywhere in their complaint. Further, they have not argued on appeal that they presented this cause of action. They claim breach of contract, misrepresentation, and violations of the consumer laws.

In Ohio, breach of contract and misrepresentation claims by students against educational institutions have been entertained by the courts for some time. *Spier v. American*

*Univ. of Carribean* (1981), 3 Ohio App. 3d 28; *Behrend v. State* (1977), 55 Ohio App. 2d 135. In *Behrend,* this court held that an action would lie for an implied contract to provide accredited academic training where a state university closed down its school of architecture after losing accreditation. Moreover, we recognized in that case that an action for misrepresentation would lie for untrue or misleading statements about accreditation. See, also, *Behrend v. State* (Feb. 22, 1979), Franklin App. No. 78AP-575, unreported (1979 Opinions 315); *Behrend v. State* (Nov. 12, 1981), Franklin App. No. 80AP-328, unreported (1981 Opinions 3649); *Behrend v. State* (March 22, 1984), Franklin App. No. 83AP-480, unreported (1984 Opinions 699). Hence, plaintiffs have stated claims for breach of contract and misrepresentation.

Moreover, plaintiff have stated valid claims under the consumer laws. Defendants' contention that the Consumer Sales Practices Act is not applicable because the legislature never intended it to apply to regulated professional schools, is not well-taken. The statute is applicable by its own terms. The school supplied services to consumers in a consumer transaction and plaintiffs have alleged facts of unfair or deceptive acts or practices under R.C. 1345.02. See *Drexel v. Columbus Technical Institute* (Jan. 18, 1990), Franklin App. No. 88AP-271, unreported (1990 Opinions 121). Plaintiffs may also claim that defendants committed unconscionable acts or practices under R.C. 1345.03. In essence, plaintiffs are entitled to show that defendants abused the privilege of contract. Plaintiffs have stated claims for violations of both R.C. 1345.01 and R.C. 1345.23(B).

Plaintiffs' first and second assignments of error are well-taken.

Plaintiffs' assignments of error are sustained. The judgment of the trial court is reversed, and the cause remanded for further proceedings consistent with this opinion and in accordance with law.

*Judgment reversed and*
*cause remanded.*

WHITESIDE and RUMER, J.J., concur.

RUMER, J., of the Allen County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.