OPINION
{¶ 1} Plaintiff-appellant, Todd Leiby ("Leiby"), appeals from the judgment of the Ohio Court of Claims granting summary judgment in favor of defendant-appellee, The University of Akron ("UA"), on Leiby's claims for breach of contract. Because we conclude that UA did not breach the terms of its contract with Leiby, we affirm.
 {¶ 2} Leiby attended UA from Fall semester 1994 through Spring semester 2000, earning a Bachelor of Arts Degree in sociology and law enforcement. Leiby again attended UA from Fall semester 2001 through Fall semester 2003, earning a Masters Degree in science management/human resources. On November 4, 2004, Leiby initiated this action in the Ohio Court of Claims. Leiby's amended complaint, filed December 10, 2004, asserts three claims for breach of contract against UA. In Count 1, Leiby alleges that he entered into a contractual agreement with UA, the terms of which are set forth in the UA undergraduate and graduate bulletins, and that:
Defendant (The University of Akron) has breached [its] contractual obligations on numerous occasions both known and unknown to the Plaintiff (Mr. Todd Leiby), by reusing examinations from one semester to the next and so forth. In most cases the examinations are given willingly back to the students and in a few other cases the proper care is not taken to guarantee security of the test. Exhibits: H-Z.
In Count 2, Leiby alleges that UA employees breached contractual obligations and failed to remedy the alleged breaches. Finally, in Count 3, Leiby alleges that UA's failure to comply with its contractual obligations rendered Leiby unable to complete his educational goals.
 {¶ 3} Leiby recalls professors re-using exams and students studying from prior exams as early as the Spring semester of 1995. After returning to UA for his graduate studies, Leiby learned, as early as his first semester, that professors continued to re-use exams. Leiby never expressed his concerns about professors re-using exams or about students studying from previous exams to his professors or the dean of his college. Leiby did not express his concerns on the instructor evaluations he had the opportunity to complete at the end of each semester and did not report any alleged contractual breach through UA's graduate grievance procedure. Despite his understanding that the UA honor code places an affirmative duty on a student to report dishonest behavior of which the student has knowledge, Leiby never reported another student's use of previous exams.
 {¶ 4} Leiby first reported his allegations of contractual breaches to UA in March 2003, when he e-mailed an anonymous letter to UA's president, vice president, and general counsel, alleging that UA "intentionally recklessly defaulted on [its contractual] obligations[.]" Leiby's e-mail did not specify Leiby's concerns about re-use of exams or failure to protect the integrity of exams and did not identify any specific breach of contract.
 {¶ 5} UA filed an answer to Leiby's amended complaint on January 21, 2005. On October 5, 2005, UA filed a motion for summary judgment, to which Leiby responded on October 12, 2005. The trial court granted UA's motion for summary judgment and entered final judgment in UA's favor on November 9, 2005. The trial court acknowledged the contractual relationship between Leiby and UA, but concluded, as a matter of law, that UA did not breach its contract with Leiby. The trial court further stated that, to the extent Leiby alleged a claim for educational malpractice, Ohio law recognizes no such claim. Leiby timely appealed.
 {¶ 6} Before considering the merits of Leiby's appeal, we address UA's motion to strike certain attachments to Leiby's appellate brief. UA requests an order striking: (1) Exhibit 4, the affidavit of Dr. John Herbert; (2) Exhibit 5, a document entitled "Academic Integrity Defined"; (3) Exhibit 6, a Yahoo e-mail list; and (4) Exhibit 7, Responses to Plaintiff's Request for Production and Other Things. UA contends that the identified exhibits were not part of the record when the trial court ruled on UA's motion for summary judgment. Therefore, UA argues that we may not consider such exhibits on appeal. Leiby responds that each contested exhibit was part of the trial court record and is properly before this court.
 {¶ 7} This court may not add matter to the record that was not part of the trial court's proceedings and decide an appeal based on the new matter. McAuley v. Smith (1998),82 Ohio St.3d 393, 396. Rather, appellate review is limited to the record as it existed at the time the trial court rendered judgment. Chickeyv. Watts, Franklin App. No. 04AP-818, 2005-Ohio-4974, at ¶ 14. Upon review of the record transmitted from the trial court, we find that neither Dr. Herbert's affidavit nor the Yahoo e-mail list were in the trial court's record prior to judgment. Leiby filed Dr. Herbert's affidavit on November 28, 2005, two weeks after the trial court entered its final judgment. In fact, Dr. Herbert did not execute his affidavit until after the trial court's entry of summary judgment. Because the trial court could not have considered Dr. Herbert's affidavit in its determination of UA's motion for summary judgment, we may not consider it on appeal.
 {¶ 8} Likewise, Exhibit 6 to Leiby's appellate brief was not before the trial court when it decided UA's motion for summary judgment, despite Leiby's contention that it is the same document as Exhibit C to his complaint. Exhibit 6 to Leiby's appellate brief consists of printouts of the "Inbox" and "Sent Items" folders for Yahoo e-mail account uofads@yahoo.com, the anonymous e-mail account Leiby used to communicate with UA officials and UA's counsel. Exhibit C to Leiby's complaint appears to be a compilation of e-mails and attachments sent from uofads@yahoo.com to UA officials. Although the two documents apparently reference some of the same e-mail messages, they are not identical. For example, Exhibit 6 references e-mail messages sent and received months after Leiby filed his complaint in the trial court. Because Exhibit 6 does not appear in the trial court's record, this court may not consider it on appeal.
 {¶ 9} Our review of the record convinces us that the remaining contested exhibits are properly before this court. Leiby filed the remaining exhibits on October 20, 2005, as attachments to his pre-trial statement, prior to the trial court ruling on UA's motion for summary judgment. Accordingly, we sustain in part and overrule in part UA's motion to strike. Specifically, we deny UA's motion to strike with respect Exhibits 5 and 7, and sustain UA's motion with respect to Exhibits 4 and 6.
 {¶ 10} Having disposed of UA's motion to strike, we turn to the merits of Leiby's appeal and to Leiby's single assignment of error:
The Court of Claims of Ohio Erred by granting the Defendant-Appellee's motion for Summary Judgment.
 {¶ 11} Appellate review of summary judgments is de novo.Koos v. Cent. Ohio Cellular, Inc. (1994), 94 Ohio App.3d 579,588, citing Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. When an appellate court reviews a trial court's disposition of a summary judgment motion, it applies the same standard as the trial court and conducts an independent review, without deference to the trial court's determination. Maust v.Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107; Brown
at 711. We must affirm the trial court's judgment if any grounds the movant raised in the trial court support it. Coventry Twp.v. Ecker (1995), 101 Ohio App.3d 38, 41-42.
 {¶ 12} Pursuant to Civ.R. 56(C), summary judgment shall be rendered forthwith if "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Accordingly, summary judgment is appropriate only where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can come to but one conclusion, that conclusion being adverse to the non-moving party. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66.
 {¶ 13} "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record * * * which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." Dresher v. Burt (1996),75 Ohio St.3d 280, 292. Once the moving party meets its initial burden, the non-movant must then produce competent evidence of the types listed in Civ.R. 56(C) showing that there is a genuine issue for trial. Id. at 293. Because summary judgment is a procedural device to terminate litigation, courts should award it cautiously after resolving all doubts in favor of the non-moving party.Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 359.
 {¶ 14} To recover upon a breach of contract claim, a plaintiff must prove "`the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff.'" Powell v. Grant Med. Ctr., 148 Ohio App.3d 1,2002-Ohio-443, at ¶ 27, quoting Nilavar v. Osborn (2000),137 Ohio App.3d 469, 483. In its motion for summary judgment, UA argued that Leiby failed to demonstrate that UA breached its contractual obligations and failed to present evidence that he suffered damages as a result of the alleged breach. UA also argued that any claim based on an alleged breach prior to November 4, 2002, was barred by the statute of limitations and that, to the extent Leiby asserted a claim for educational malpractice, Ohio courts do not recognize such a claim. The trial court did not address UA's statute of limitations argument, but concluded that UA did not breach its contract with Leiby.
 {¶ 15} There is no dispute that a contractual relationship existed between Leiby and UA during Leiby's enrollment at UA. As this court has recognized, "`when a student enrolls in a college or university, pays his or her tuition and fees, and attends such school, the resulting relationship may reasonably be construed as being contractual in nature.'" Bleicher v. Univ. of CincinnatiCollege of Med. (1992), 78 Ohio App.3d 302, 308, quotingBehrend v. State (1977), 55 Ohio App.2d 135, 139. The terms of the contractual relationship are found in the university catalog and handbook supplied to students. Embrey v. Central StateUniv. (Oct. 8, 1991), Franklin App. No. 90AP-1302, citing Smithv. Ohio State Univ. (1990), 53 Ohio Misc.2d 11, 13. Here, the terms of the contractual relationship between Leiby and UA are contained in the UA undergraduate and graduate bulletins.
 {¶ 16} In his amended complaint, Leiby's only specific allegation of a breach concerns UA's re-use of exams from semester to semester. However, Leiby also alleged that, in most cases of re-use, professors return exams to students or otherwise fail to exercise proper care to guarantee the security of the exams.[1] When asked in his deposition to explain what UA did to breach its contract with him, Leiby responded that he did not receive his fair education. He explained: "University of Akron Professors have — I don't know what extent this goes to, but more or less they have reused their information for exam purposes, given this back to students, then, in turn, these students have used it to their advantage." (Leiby Depo. at 16-17.) Leiby argues that his concern is not with re-use of exams, per se, but with UA's alleged failure to protect the integrity of the exams by returning them to students, who can then pass them to future students.
 {¶ 17} The construction of written contracts is a matter of law. McConnell v. Hunt Sports Ent. (1999), 132 Ohio App.3d 657,675, citing Alexander v. Buckeye Pipe Line Co. (1978),53 Ohio St.2d 241, paragraph one of the syllabus. "[W]here the terms in an existing contract are clear and unambiguous, this court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties."Alexander at 246. The trial court concluded that the terms of the contractual relationship between Leiby and UA, as set forth in the UA undergraduate and graduate bulletins, are clear and unambiguous and that the contract includes no direct or implied prohibition against the re-use of exams. We agree.
 {¶ 18} In his deposition, Leiby could not point to specific language in the UA bulletins expressly prohibiting professors from re-using exams. Upon review, we conclude that the university bulletins contain no express prohibition against the re-use of examination materials and no express prohibition against professors returning graded exams to students. Moreover, the contract does not expressly require UA or its faculty members to take any specific action to guarantee the integrity of exams.
 {¶ 19} In Embrey, this court addressed a student's breach of contract claim against her university. Embrey, a student in Central State University's college of education, sued the university for breach of contract after the university dismissed her from a student teaching course, that was a prerequisite to obtaining her education degree and teaching certificate. Embrey argued that her contract with the university required the university to observe her teaching and to provide written evaluations of her performance, but Embrey was unable to point to any contractual terms to indicate that the university had a duty to provide written evaluations of student teaching performance before dismissing a student from the course. We stated that, "[u]nless the contract between the university and Embrey assigned a duty to Embrey's supervising instructors to make written evaluations of her performance, the fact that she received no written evaluations until after she was dismissed from the course cannot constitute a breach of contract." Here, like in Embrey,
the contract between Leiby and UA did not assign a specific duty to Leiby's professors to refrain from re-using exams or to ensure that students were unable to study from past exams.
 {¶ 20} In an attempt to identify the contractual basis for his claims, Leiby identified a provision in the UA graduate bulletin for 2002-2003, which provides:
Expectations and Responsibilities
* * *
Inside the Classroom
Inside the classroom, faculty are expected to respect the sanctity of the teaching/learning process by honoring their commitment to students in terms of time, fairness, and enthusiasm. It is the responsibility of faculty to set and enforce the classroom rules of conduct. Faculty members are expected to treat men and women, persons of all colors and ethnicities, and persons with varying abilities, spiritual preference, or sexual orientation with equitable respect and consideration. Faculty should value and pursue excellence in teaching as well as research. Faculty shall not engage in sexual or other forms of harassment or engage in inappropriate dual relationships with students. Faculty must not tolerate academic dishonesty nor discrimination or harassment from students to other students.
(Leiby Depo. Exh. A.) Leiby testified that the faculty's responsibility to "set and enforce the classroom rules of conduct" and "not tolerate academic dishonesty nor discrimination or harassment from students to other students" implies a prohibition against re-using exams. (Leiby Depo. at 49.)
 {¶ 21} Leiby argues that studying from old exams constitutes academic dishonesty, which faculty members must not tolerate. The UA graduate bulletin defines academic dishonesty, in part, as violation of procedures proscribed by the professor to protect the integrity of exams. However, Leiby admitted in his deposition that none of his professors expressly prohibited studying from old exams. In the absence of a prohibition by the faculty member, studying from previous exams does not fall within UA's definition of academic dishonesty. The fact that faculty members returned graded exams to students and then re-used those exams in subsequent semesters does not constitute a breach of the faculty members' duties, as expressed in the UA bulletins.
 {¶ 22} In support of its motion for summary judgment, UA submitted the affidavit of Associate Provost, Nancy L. Stokes, who stated: "[UA] has no rule, policy, or directive which dictates or otherwise forbids a faculty member from using the same test or examination more than once[.]" (Stokes Aff. at ¶ 10.) Stokes further stated that "[d]ecisions regarding the selection of testing materials for a course fit squarely within the academic discretion/academic freedom of the individual faculty member." Id. at ¶ 11. The section of the UA graduate bulletin that Leiby identified in his deposition as the contractual basis for his claims does not restrict the academic discretion of faculty members to select testing material, to re-use testing materials from semester to semester, or to return graded exams to students. Like the trial court, we conclude that the clear and unambiguous language of the UA bulletins includes no implied prohibition against instructors re-using examinations or examination questions, even after returning graded exams to previous students.
 {¶ 23} Although Leiby responded to UA's motion for summary judgment, he submitted no evidence of the types listed in Civ.R. 56(C) in opposition to UA's motion. Rather, he simply reasserted his conclusory allegations that UA breached its contractual obligations. Given the lack of an express or implied prohibition in the UA bulletins against the re-use of examination materials or the return of graded exams, coupled with the academic discretion granted to UA faculty, the trial court properly concluded that UA did not breach its contractual obligations to Leiby. See Embrey ("[a]bsent language in the terms of the contract requiring a written evaluation, and in light of the discretionary authority bestowed upon faculty by the university, the trial court properly found that the university did not breach its contract"). Therefore, the trial court did not err in granting UA's motion for summary judgment.
 {¶ 24} In addition to arguing that it did not breach any contractual obligation to Leiby, UA argues that, even in the event of a breach, Leiby could not prove resultant damages. To recover for breach of contract, a claimant must prove damage as a result of the breach. Metropolitan Life Ins. Co. v. TriskettIllinois, Inc. (1994), 97 Ohio App.3d 228, 235. The Ohio Supreme Court has held that "summary judgment may be granted to the defendant in a breach-of-contract case where the plaintiff has failed to provide evidence of economic damages resulting from a breach of contract and has failed to seek injunctive relief or specific performance of a contractual duty, but instead rests his or her right to proceed to trial solely on a claim for nominal damages." DeCastro v. Wellston City School Dist. Bd. of Edn.
(2002), 94 Ohio St.3d 197, 201.
 {¶ 25} In his amended complaint, Leiby prays for economic damages to compensate him for tuition he paid to UA and for time lost in pursuit of his degrees. UA argues that Leiby can present no evidence entitling him to such economic damages. It is undisputed that UA awarded Leiby his undergraduate and graduate degrees upon Leiby's completion of the requirements for such degrees. Accordingly, UA argues that, even if the re-use of exams after returning previous exams constituted a breach of the contractual terms contained in the UA bulletins, Leiby suffered no economic damages. We agree.
 {¶ 26} Despite receiving his Bachelor and Masters Degrees from UA, Leiby testified that, based on the effect of other students' access to prior exams on his GPA and class curves, his degrees were devalued. Nevertheless, Leiby has relied on his UA degrees in his job search, applying for positions that desire a candidate with a Masters Degree in human resources. Additionally, Leiby testified that no potential employer has refused to hire him because of his degrees from UA. In response to evidence that he received his degrees and suffered no economic harm because of any alleged breach, Leiby submitted no evidence that his degrees are different from those to which he was contractually entitled. Leiby fails to identify any evidence of the types listed in Civ.R. 56(C) that he has suffered economic damage as a proximate result on UA's alleged breach of contract. Because Leiby could not prove economic damages resulting from the alleged breach, theDeCastro rule applies. See Rizvi v. St. Elizabeth Hosp. Med.Ctr., Mahoning App. No. 02-CA-141, 2003-Ohio-7011, at ¶ 37. Leiby's request for a public apology and for the opportunity to return his diplomas to UA does not remove this case from the rule set forth in DeCastro. For this additional reason, we conclude that the trial court properly granted UA's motion for summary judgment.
 {¶ 27} Lastly, we briefly address Leiby's contention that his complaint alleges no claim for educational malpractice and that the trial court erred in construing his complaint as asserting such a claim. Although the trial court addressed UA's argument that Leiby's amended complaint, in effect, asserts a claim for educational malpractice, the issue was not determinative of the trial court's decision. The trial court addressed educational malpractice only after determining that UA was entitled to summary judgment on Leiby's claims for breach of contract, simply and correctly stating:
Additionally, to the extent that plaintiff alleges a claim for educational malpractice based upon his contention that his diplomas are worthless, Ohio law does not recognize such a claim.Malone v. Academy of Court Reporting (1990),64 Ohio App.3d 588, 593; Lemmon v. University of Cincinnati (2001),112 Ohio Misc.2d 23.
The trial court had already determined, as a matter of law, that UA did not breach its contract with Leiby and that UA was, thus, entitled to summary judgment on all of Leiby's claims. We find no error in the trial court summarily addressing UA's additional argument regarding educational malpractice.
 {¶ 28} For the reasons set forth above, we overrule Leiby's assignment of error, and we affirm the judgment of the Ohio Court of Claims.
Judgment affirmed.
Petree and Sadler, JJ., concur.
[1] Other than returning graded exams to students, Leiby neither alleged nor testified to any other failure to exercise proper care to guarantee the security or integrity of exams.