[Cite as *Reznickcheck v. N. Cent. Correctional Inst.*, 2010-Ohio-547.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

JOHN J. REZNICKCHECK

    Plaintiff

    v.

NORTH CENTRAL CORRECTIONAL INSTITUTION, et al.

    Defendants
    Case No. 2008-09961

Judge Joseph T. Clark
Magistrate Matthew C. Rambo

MAGISTRATE DECISION

{¶ 1}  Plaintiff brought this action alleging breach of contract, negligence, and racial discrimination.  The issues of liability and damages were bifurcated and the case proceeded to trial on the issues of liability and civil immunity.

{¶ 2}  As an initial matter, on December 14, 2009, defendants filed a motion to quash eight subpoenas filed by plaintiff for failure to tender witness fees.  The court notes that failure of service is not a proper basis for quashing a subpoena pursuant to Civ.R. 45(C)(3).  Accordingly, defendants' motion is DENIED.  However, inasmuch as plaintiff did not provide the appropriate witness fees, the court finds that the subpoenas were not properly served pursuant to Civ.R. 45(B), and are therefore not enforceable.

{¶ 3}  At all times relevant, plaintiff was an inmate in the custody and control of the Ohio Department of Rehabilitation and Correction (DRC) at the North Central Correctional Institution (NCCI) pursuant to R.C. 5120.16.  Plaintiff's claims arise out of his participation in a building maintenance apprenticeship program beginning January 24, 2007.  (Plaintiff's Exhibit 2.)  Plaintiff sought a job assignment at NCCI as a

maintenance repair worker in early January 2007 so that he might then enroll in the apprenticeship program in order to gain knowledge and experience that he could put to use upon his release from incarceration. Plaintiff testified that he executed forms issued by the United States Department of Labor and reported to DRC employee David Sandridge, who served as his supervisor for the program. Plaintiff stated that after working under Sandridge for two months, he asked him about his qualifications as a supervisor for the apprenticeship program and was informed that much of Sandridge's experience was "on the job" and that he did not possess a teaching certificate, a journeyman's card, or any other certificate memorializing his qualifications to be a supervisor in the apprenticeship program. Plaintiff further testified that he then requested that Sandridge provide him with textbooks and instruction manuals pertaining to "building maintenance" so that he could study them and further his education on his own time. Plaintiff stated that Sandridge obtained such books, but that he would not permit plaintiff to take them to his cell even though inmates in other vocational programs were permitted to do so.

{¶ 4} Plaintiff testified that on April 12, 2007, Sandridge presented him with a performance evaluation (Plaintiff's Exhibit 4) wherein Sandridge gave him a score of 31 out of a possible 70 points. In the evaluation form Sandridge stated that plaintiff "needs to focus on the job more," and "needs more knowledge and skills." According to plaintiff, as a result of the evaluation, he was dismissed from the apprenticeship program on May 16, 2007, and assigned to a different job within the institution. Plaintiff stated that he appealed the dismissal, but that the decision was ultimately affirmed. (Plaintiff's Exhibit 5.)

{¶ 5} Plaintiff asserts that when he entered into the apprenticeship program he executed a contract with NCCI, whereby NCCI agreed to provide him with an "accredited" apprenticeship program overseen by a certified or licensed supervisor. Plaintiff claims that NCCI breached said contract both because Sandridge was not

certified or licensed and because the program was not "accredited." Plaintiff also asserts that the Ohio Department of Education (ODE) was negligent in its oversight of the apprenticeship program. Finally, plaintiff asserts that Sandridge denied him textbooks and wrongfully terminated him from the apprenticeship program because of his race.

{¶ 6} A breach of contract occurs when a party demonstrates the existence of a binding contract or agreement; the non-breaching party performs its obligations; the other party fails to fulfill its contractual obligations without legal excuse; and the non-breaching party suffer damages. *Garofalo v. Chicago Title Ins. Co.* (1995), 104 Ohio App.3d 95, 108.

{¶ 7} It is well-settled that the relationship between an inmate and DRC is custodial, not contractual. *Hurst v. Dept. of Rehab. & Corr.* (Feb. 17, 1994), Franklin App. No. 93AP-716. However, this court has previously found that a contractual relationship exists when an inmate executes a written apprenticeship agreement with a correctional institution. *Allen v. Ohio Dept. of Rehab & Corr.*, Ct. of Cl. No. 2004-06461, 2005-Ohio-7015. In this case, plaintiff did not present the court with any written agreement or other documentation to show that he and defendants had entered into a formal apprenticeship agreement. Inasmuch as plaintiff did not demonstrate the existence of a written agreement, his claims based upon any breach of contract must fail.

{¶ 8} Furthermore, to the extent that plaintiff asserts a claim of "educational malpractice" based upon his allegations that the instruction which he received from Sandridge was lacking in quality, Ohio law does not recognize such a claim. *Malone v. Academy of Court Reporting* (1990), 64 Ohio App.3d 588, 593; *Lemmon v. University of Cincinnati* (2001), 112 Ohio Misc.2d 23.

{¶ 9} Plaintiff also relies upon R.C. 5120.40, which provides that:

{¶ 10} "All teachers employed in any institution under the jurisdiction of the department of rehabilitation and correction *shall possess educator licenses or have the*

*qualifications* and approval that the superintendent of the Ohio central school system, after conference with the officers in charge of the several institutions, prescribes for the various particular types of service or service in the particular institutions."   (Emphasis added.)

{¶ 11} Similarly, DRC policy 57-EDU-07 states that each apprentice shall serve under a supervisor who is "knowledgeable and experienced in the craft," and requires the supervisor to schedule on-the-job training for the apprentices, maintain monthly attendance records, and submit information for the awarding of earned credit hours to the apprentices.

{¶ 12}    Assuming, arguendo, that R.C. 5120.40 creates a private right of action, the court finds that plaintiff failed to establish that defendants violated such statute by not providing him with a qualified educator for his apprenticeship program. The evidence does not support plaintiff's contention that defendant held Sandridge out as an "educator" as that term is used in R.C. 5120.40.  Indeed, while defendants admit that Sandridge did not possess an "educator license," they aver that he was otherwise qualified and approved to act as a supervisor in the building maintenance apprenticeship program, by reason of his knowledge and experience in building maintenance.  Plaintiff did not offer any evidence to the contrary.

{¶ 13} Regarding plaintiff's assertion that he was discriminated against based upon his race, R.C. 4112.02 provides that:

{¶ 14} "It shall be an unlawful discriminatory practice:

{¶ 15} "(A) For any employer, because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."

{¶ 16} It is well-established that no employer-employee relationship exists between correctional institutions and inmates and thus inmates do not "fall within the scope of worker-protection statutes." *McElfresh v. Ohio Dept. of Rehab. & Corr.*, Franklin App. No. 04AP-177, 2004-Ohio-5545, ¶14, citing *Moore v. Ohio Dept. of Rehab. & Corr.* (1993), 89 Ohio App.3d 107, 111. Therefore, plaintiff's discrimination claim is without merit.

{¶ 17} To the extent that plaintiff asserts that he was discriminated against based upon his race in violation of the Ohio and federal Constitutions, it is well-settled that such constitutional claims are not actionable in the Court of Claims. See *Thompson v. Southern State Community College* (June 15, 1989), Franklin App. No. 89AP-114; *Burkey v. Southern Ohio Corr. Facility* (1988), 38 Ohio App.3d 170.

{¶ 18} With regard to plaintiff's claims that he was denied access to textbooks and learning materials by reason of Sandridge's refusal to permit plaintiff to take them to his cell for study, the court finds that such claims raise either constitutional issues or state law issues for which defendant is shielded by discretionary immunity.

{¶ 19} The Supreme Court of Ohio has held that "[t]he language in R.C. 2743.02 that 'the state' shall 'have its liability determined * * * in accordance with the same rules of law applicable to suits between private parties * * *' means that the state cannot be sued for its legislative or judicial functions or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Reynolds v. State* (1984), 14 Ohio St.3d 68, 70. Prison administrators are provided "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish* (1979), 441 U.S. 520, 547.

{¶ 20} The court finds that the decision to prohibit plaintiff from taking textbooks and other educational materials to his cell is characterized by a high degree of official

judgment or discretion.  Therefore, NCCI and DRC are entitled to discretionary immunity for claims arising from such decisions.

{¶ 21} Finally, the court finds that plaintiff failed to prove that Sandridge acted manifestly outside the scope of his employment or with malicious purpose, in bad faith, or in a wanton or reckless manner.  It is therefore recommended that the court issue a determination that David Sandridge is entitled to civil immunity pursuant to R.C. 2743.02(F) and 9.86 and that the courts of common pleas do not have jurisdiction over any civil actions that may be filed against him based upon the allegations in this case.

In sum, the court finds that plaintiff has failed to establish that he is entitled to relief under any of his claims.  Accordingly, judgment is recommended in favor of defendants.

*A party may file written objections to the magistrate's decision within 14 days of the filing of the decision, whether or not the court has adopted the decision during that 14-day period as permitted by Civ.R. 53(D)(4)(e)(i).  If any party timely files objections, any other party may also file objections not later than ten days after the first objections are filed.  A party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion within 14 days of the filing of the decision, as required by Civ.R. 53(D)(3)(b).*

_____
MATTHEW C. RAMBO
Magistrate

cc:

Randall W. Knutti                         John J. Reznickcheck, #348-163
Assistant Attorney General                Toledo Correctional Institution
150 East Gay Street, 18th Floor           2001 East Central Avenue
Columbus, Ohio 43215-3130                 Toledo, Ohio 43608

MR/cmd
Filed January 22, 2010
To S.C. reporter February 16, 2010